LIGHT v SCHMIDT

Docket No. 77-3650. Submitted May 2, 1978, at Lansing.—Decided June 6, 1978.

Russell F. Light, doing business as R. F. Light Diving & Salvage, entered into an agreement with Donald C. Schmidt, doing business as Michigan Marine Salvage, wherein Light was to provide divers for salvage operations to recover the cargo of a ship which had sunk in Lake Huron. Plaintiff had been informed that the project was to be financed by Peter Bill. Bill was present at some of the meetings at which the agreement was discussed. The salvage operation ultimately was unsuccessful. Light remained unpaid for much of his and his divers' services and brought an action for damages for breach of contract against both Schmidt and Bill. The Alpena Circuit Court, Philip J. Glennie, J., granted a motion for a directed verdict in favor of defendant Schmidt, finding him to have been merely an agent of defendant Bill, and entered a judgment on a jury verdict in favor of the plaintiff against Bill. Defendant Bill appeals, contending, among other things, that the circuit court did not have subject matter jurisdiction over the controversy. *Held:*

1. The circuit court did have jurisdiction over the subject matter. Although the contract was maritime in nature and therefore subject to the admiralty jurisdiction of a Federal district court, a saving clause of the Federal law which grants jurisdiction of admiralty cases to the Federal courts allows any

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Admiralty § 61.
[2] 68 Am Jur 2d, Salvage § 40.
[3] 2 Am Jur 2d, Admiralty §§ 61, 72.
[4] 2 Am Jur 2d, Admiralty § 12 *et seq.*
  20 Am Jur 2d, Courts §§ 12, 13, 105.
[5] 75 Am Jur 2d, Trial § 472.
[6] 5 Am Jur 2d, Appeal and Error § 886.
  75 Am Jur 2d, Trial §§ 489, 490.
[7] 75 Am Jur 2d, Trial § 525.
  Direction of verdict in favor of one or more of several defendants after plaintiff has completed his evidence. 48 ALR2d 535.

competent forum with jurisdiction over the parties to entertain a civil suit at law where the nature of the right to be enforced is such that relief may be given in an action at law.

2. The circuit court properly granted defendant Schmidt's motion for a directed verdict because the evidence supported the conclusion that Schmidt was merely an agent for Bill.

Affirmed.

1. CONTRACTS—ADMIRALTY—MARITIME CONTRACT—JURISDICTION.

A contract, to be of a maritime nature and therefore subject to the jurisdiction of a court of admiralty, must have a connection with navigation of a ship, its equipment, its preservation, or the maintenance or preservation of its crew; neither the place where the contract is made nor the place where obligations arising therefrom are to be performed is, in and of itself, conclusive of the maritime nature of the agreement.

2. ADMIRALTY—CONTRACTS—MARITIME CONTRACT—SALVAGE SERVICES.

A contract which involves salvage services to vessels both afloat or wrecked on the high seas or on the public navigable waters of the United States or to property being transported on such vessels is generally held to be maritime in nature.

3. ADMIRALTY—CONTRACTS—MARITIME CONTRACT—SALVAGE SERVICES —JURISDICTION.

A contract for the services of divers for inspection and salvage of the cargo of a vessel sunk in Lake Huron is of a maritime nature and is subject to the admiralty jurisdiction of a Federal district court.

4. COURTS—JURISDICTION—CIVIL SUIT—ADMIRALTY—FEDERAL COURTS —CIRCUIT COURTS—STATUTES.

Any competent forum that has jurisdiction of the parties may entertain a civil suit at law for the enforcement of a right conferred by the maritime laws where the right is of such a nature that relief may be given in an action at law; therefore, an action for damages for breach of a maritime contract brought by a Michigan plaintiff against defendants who were located in Michigan, which was also subject to the admiralty jurisdiction of a Federal court, was properly brought and maintained in a state circuit court (28 USC 1333).

5. MOTIONS—DIRECTED VERDICT—COURT RULES.

A motion for directed verdict may be offered at the close of the opposing party's proofs (GCR 1963, 515.1).

6. APPEAL AND ERROR—MOTIONS—DIRECTED VERDICT—TEST.

The Court of Appeals will view the evidence presented in the light most favorable to the nonmoving party when reviewing a trial court's order granting a party's motion for a directed verdict; the proper test for determining whether a motion for a directed verdict should be granted is whether or not evidence was offered upon which reasonable minds could differ.

7. TRIAL—DIRECTED VERDICT—CODEFENDANTS.

A trial court may grant a motion for a directed verdict as to one of several codefendants; such a motion was properly granted in favor of a codefendant in an action for breach of contract where the evidence presented supported the conclusion that that codefendant was merely an agent for the second defendant, who was held liable on the contract.

*Gillard, Bauer & Mazrum,* for plaintiff.

*Lowell Blumberg,* for defendant Peter Bill.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. This is an appeal by defendant Bill from an adverse verdict by a jury in the trial court, holding him liable to plaintiff in the amount of $20,672. Plaintiff had alleged that he provided certain diving services for inspection and salvage operations for which defendants failed to pay. It was also alleged that certain checks issued by defendant Schmidt and Michigan Marine Salvage were returned unpaid and that payment was wrongfully and fraudulently stopped on another check.

Plaintiff testified that he was a commercial diver who did substantial salvage work. In February, 1974, Schmidt contacted him concerning the possible salvage of a load of steel aboard a sunken vessel known as the "Monrovia". During the meeting, plaintiff and Schmidt discussed the cost of the operation and Schmidt informed plaintiff at that time that there was a third party who was backing the project financially. He did not disclose the

name of that third party. It was not until later that plaintiff came to the conclusion that defendant Bill was in charge.

After their discussion, Schmidt agreed to the rates quoted by plaintiff. Under the terms of the agreement, plaintiff would furnish four divers in addition to himself (who were to be paid once a week), and Schmidt and Bill would furnish the equipment.

Pursuant to the parties' agreement, plaintiff arrived in Alpena on May 17, 1974. The parties intended to inspect the "Monrovia" the next day. However, on that occasion, they were unable to locate the wreck. It was when they returned from this trip that plaintiff met defendant Bill. The sunken vessel was located on May 27, 1974. It was after the ship was discovered that defendant Bill called in four extra divers against the recommendation of plaintiff and defendant Schmidt. Of the four weeks that plaintiff and his divers were on the job, they were in the water only seven days and retrieved only a small amount of steel from the ship.

Financial difficulties arose shortly after the project began. Schmidt instructed plaintiff to hold a check issued on June 4, 1974, until sufficient funds could be put in the account to cover it. A stop-payment order was later issued by Mr. Schmidt. Other checks issued by Schmidt were returned marked "non-sufficient funds".

When it became apparent that the divers might not be paid, they met with plaintiff and defendants Schmidt and Bill, and informed the latter that unless they were paid, they would stop working. At that time, Bill guaranteed payment of the money and ordered Schmidt to pay the fees of the divers. It was plaintiff's opinion that Bill was

guaranteeing payment with his personal finances, since at no time did he mention a corporation.

The evidence at trial showed that plaintiff knew of the existence of a corporation that was connected with defendant Bill and also knew it was named after Peter Bill. However, plaintiff was not told nor was he aware that Peter Bill & Associates, Incorporated, was financing the project, if that in fact was the case. Plaintiff did acknowledge that checks had been made out by Peter Bill & Associates to plaintiff; however, there was no other writing between plaintiff and Peter Bill & Associates.

Plaintiff Light was the only witness called by plaintiff at trial. Following Light's testimony, a motion for directed verdict as to defendant Schmidt was granted by the trial court. The trial court held that Schmidt was an agent for Bill and was therefore not liable on the contract with plaintiff or on the checks issued for payment of plaintiff's services.

Defendant Bill was found liable for the difference between the amount plaintiff received, $1,813, and the total cost of the project, $22,485, as of June 18, 1974—the day operations were halted.

On appeal, defendant's (hereinafter, unless otherwise specified, reference to "defendant" shall mean reference to defendant Bill) major contention is that the trial court lacked subject matter jurisdiction to hear this case. Defendant argues that, by definition, this was a case properly cognizable only in admiralty jurisdiction.

The extent of Federal admiralty and maritime jurisdiction is set forth in 28 USC 1333:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize."

It is claimed here that the contract with plaintiff was of a maritime nature and therefore subject to admiralty jurisdiction. In order for a contract to be of a maritime nature, it must have a connection with navigation of a ship, its equipment, its preservation, or the maintenance or preservation of its crew. As noted in *The W T Blunt,* 291 F 899, 901 (ED Mich, 1923):

"If a contract pertains to maritime service or a maritime transaction, that is, if it has a direct or substantial connection or relation to navigation, it is maritime in nature and may afford a sufficient basis for the jurisdiction of a court of admiralty."

Thus, it is the subject matter of the contract or the nature of the transaction that determines whether the contract is maritime in nature and subject to Federal court jurisdiction and neither the place where the contract is made nor the place where obligations arising therefrom are to be performed is, in and of itself, conclusive of the maritime nature of the agreement. *Franks v Land & Marine Applicators, Inc,* 347 F Supp 243 (ED La, 1972). Accord, *Ocean Science & Engineering Inc v International Geomarine Corp,* 312 F Supp 825, 828 (D Del, 1970), where Judge Latchum observed:

"*Romero v International Terminal Operating Co,* 358 US 354, 360; 79 S Ct 468, 474; 3 L Ed 2d 368 (1958) recognized the organic growth and evolving nature of maritime law and jurisdiction by pointing out that

Article III, § 2, Cl. 1 (3d provision) of the United States Constitution 'empowered the federal courts in their exercise of the admiralty and maritime jurisdiction * * * to continue the development of this law within constitutional limits.' Whether a contract is maritime is not a static concept; it depends, as always, upon the nature of the contract and the service to be rendered and performed and its manner of performance."

When a contract involves salvage services to vessels both afloat or wrecked on the high seas or on the public navigable waters of the United States or to property being transported on such vessels, it is generally held that such a contract is maritime in nature. *Houseman v The Cargo of the Schooner North Carolina,* 40 US (15 Peters) 40; 10 L Ed 653 (1841). It is not material that the salvage services were performed under a written contract and that the compensation was not dependent on result but was regulated by the terms of the contract. *The Roanoke,* 50 F 574, 577 (ED Wis, 1892).

Therefore, the contract in this case is of a maritime nature and subject to the admiralty jurisdiction of a Federal district court. However, that conclusion does not settle the issue. Account must be taken of the "saving to suitors" clause of 28 USC 1333. That clause has been held to authorize any competent forum that has jurisdiction of the parties to entertain a civil suit at law for the enforcement of a right conferred by the maritime laws where the right is of such a nature that relief may be given in an action at law. In *Atlantic & Gulf Stevedores, Inc v Ellerman Lines, Ltd,* 369 US 355, 359–360; 82 S Ct 780; 7 L Ed 2d 798 (1962), *reh den,* 369 US 882; 82 S Ct 1137; 8 L Ed 2d 284 (1962), the United States Supreme Court concluded:

"Congress since 1789, in giving Federal District Courts original jurisdiction of civil cases in admiralty, has saved 'to suitors in all cases all other remedies to which they are otherwise entitled.' 28 USC § 1333(1). Therefore, a suit for breach of a maritime contract, while it may be brought in admiralty, may also be pursued in an ordinary civil action, since, unlike the proceeding in *The Moses Taylor* [v *Hammons,* 71 US 408] 4 Wall 411 [18 L Ed 397 (1867)], it is a suit *in personam.* 'Where the suit is *in personam,* it may be brought either in admiralty or, under the saving clause, in an appropriate non-maritime court, by ordinary civil action.' Gilmore and Black, The Law of Admiralty (1957), p. 36." (Footnote omitted.)

Accord, *Thornes v Socony Vacuum Oil Co,* 37 F Supp 616 (SD NY, 1940), noting that "[a]s a general proposition rights arising out of maritime contracts are thus enforceable at law as well as in admiralty". See also, *Granger v Judge of Wayne Circuit Court,* 27 Mich 406 (1873), *Adams v John R White & Son, Inc,* 41 RI 157; 103 A 230 (1918).

Therefore, the cause of action in this case comes within the "saving to suitors" clause and was properly brought and maintained in the trial court. Having concluded that the trial court had jurisdiction in this matter, we pass to defendant's other contentions on appeal. After careful examination of those issues, we hold that none are meritorious. There was sufficient evidence to support the jury's verdict. Thus, we affirm the judgment arrived at in the trial court. However, we do want to elucidate on defendant's argument that the trial court committed reversible error in granting a directed verdict for codefendant Schmidt on the ground that Schmidt was acting as an agent for defendant.

A directed verdict is properly granted where there are no factual questions in dispute. Thus, this Court is faced with the question of whether

there was sufficient evidence presented at the conclusion of plaintiff's proofs to raise the issue of whether Schmidt was other than an agent for Bill. As noted earlier, the trial court held that there was not sufficient evidence and granted codefendant Schmidt's motion for directed verdict.

When a defendant is seeking a directed verdict, the motion may be offered at the close of plaintiff's evidence. GCR 1963, 515.1. On appeal from a trial court order granting defendant's motion for a directed verdict, this Court will view the evidence presented in the light most favorable to the plaintiff. *Cody v Marcel Electric Co,* 71 Mich App 714; 248 NW2d 663 (1976), *lv den,* 399 Mich 851 (1977), *Hensley v Colonial Dodge, Inc,* 69 Mich App 597; 245 NW2d 142 (1976). The proper test for determining whether the motion should be granted is whether or not evidence was offered upon which reasonable minds could differ. *Armstrong v LeBlanc,* 395 Mich 526; 236 NW2d 419 (1975). It should also be noted that the trial court may grant a directed verdict as to one of several codefendants. *Annis v Reiser & Co,* 209 Mich 512; 177 NW 212 (1920).

Examining the facts in this case, it will be remembered that plaintiff Light was the only person to testify during plaintiff's case in chief. Following this testimony, codefendant Schmidt moved for a directed verdict which was granted by the trial court. We hold that the evidence presented supported the conclusion that Schmidt was merely an agent for defendant. There was no evidence to suggest that Schmidt was an independent contractor hired by defendant to procure divers and equipment on his own. The trial court's grant of codefendant Schmidt's motion did not constitute reversible error.

Affirmed. Costs to appellee.