## HOLMES v ALLSTATE INSURANCE COMPANY

Docket No. 54500. Submitted June 21, 1982, at Detroit.—Decided September 22, 1982. Leave to appeal applied for.

Timothy Holmes received workers' compensation benefits from Allstate Insurance Company, his employer's workers' compensation carrier. After paying the benefits for approximately four years, Allstate stopped payment when Holmes failed to attend vocational rehabilitation and failed to provide necessary medical reports regarding inability to attend the rehabilitation. Approximately four months later, Allstate resumed payment of the benefits and paid all past sums due Holmes. Holmes filed suit against Allstate and Jan Janowiak, the employee of Allstate who recommended a cut-off of Holmes' benefits, in Wayne Circuit Court seeking damages for intentional infliction of emotional distress. The court, William J. Giovan, J., granted defendants' motion for a directed verdict of no cause of action. Plaintiff's motion for a new trial was denied. He appeals. *Held:*

The trial court correctly granted defendants' motion for a directed verdict. Plaintiff failed to produce sufficient evidence of extreme and outrageous conduct, of defendants' injurious intent or reckless disregard for the consequences of their acts, or of the actual experiencing of severe distress to submit the case to the jury.

Affirmed.

1. TRIAL — DIRECTED VERDICTS.

A trial court may not direct a verdict whenever a fact question exists upon which reasonable minds may differ.

2. APPEAL — DIRECTED VERDICTS.

An appellate court in reviewing a trial court's grant of a directed

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 500.

[2] 5 Am Jur 2d, Appeal and Error § 886.

[3, 4] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 1, 4, 5.

[4] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 17.

[5, 6] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 40.

verdict must review all the evidence presented to determine if a fact question exists; in doing so, the reviewing court must view the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor; if the evidence, viewed in this manner, establishes a prima facie case, *i.e.,* presents a question upon which reasonable minds could differ, the trial court's grant of a directed verdict must be reversed.

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The Court of Appeals has delineated intentional infliction of emotional distress as a separate cause of action which is not necessarily parasitic to another cause of action as an aggravating element of damages.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

5. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Liability for intentional infliction of mental distress exists only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

6. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A person is not liable for intentional infliction of mental distress where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

*Cockrel, Cooper & King* (by *Anthony J. Vigliotti*), for plaintiff.

*Franklin, Petrulis, Lichty & Mellon, P.C.* (by *Bruce W. Franklin* and *Irene A. Bruce*), for defendants.

Before: CYNAR, P.J., and N. J. KAUFMAN and P. R. MAHINSKE,* JJ.

PER CURIAM. Plaintiff seeks damages from defendants for the intentional infliction of emotional distress in the handling of plaintiff's workers' compensation benefits claim. MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.* A jury trial commenced on March 29, 1979. After a lengthy presentation of plaintiff's case, defendants moved for a directed verdict on April 26, 1979. Finding that plaintiff had not established a prima facie case of intentional infliction of emotional distress, the trial judge granted defendants' motion. Plaintiff appeals from an order, entered December 26, 1979, denying his motion for a new trial.

Plaintiff injured his lower back at work on September 22, 1970. He received workers' compensation benefits from Allstate Insurance Company (Allstate), the workers' compensation carrier for plaintiff's employer, which continued without interruption until April 23, 1974. Plaintiff's benefits were stopped at that time when he failed to attend vocational rehabilitation and failed to provide necessary medical reports regarding inability to do so. On the advice of counsel to the effect that plaintiff's benefits were wrongly cut off without a hearing by the Bureau of Workers' Disability Compensation, Allstate resumed plaintiff's workers' compensation payments on August 12, 1974. Payment for all past due sums was agreed to on August 14, 1974.

During the course of treatment for his back injury, plaintiff was operated on twice by Dr. Sidney Charnas. Allstate paid all of the medical bills for treatment of plaintiff by Dr. Charnas and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

numerous other doctors. Plaintiff continued to treat with Dr. Charnas until December 19, 1972. Plaintiff alleged at trial that he had requested to see Dr. Charnas in January and again in February of 1974 because of a "knot" in his back. Allstate, stating that no relationship was shown to plaintiff's work-related injury, initially refused to authorize the treatment and later stated it would authorize payment for such treatment only after receiving a report from the doctor showing that the "knot" was related to plaintiff's work-related injury.

Whenever a fact question exists upon which reasonable minds may differ, the trial judge may not direct a verdict. On the other hand, when no fact question exists, the trial judge may properly grant such a verdict. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975); *Light v Schmidt,* 84 Mich App 51, 59; 269 NW2d 304 (1978). A reviewing court must review all the evidence presented to determine if a fact question exists. In doing so, this Court must view the evidence in a light most favorable to the nonmoving party, granting him every reasonable inference and resolving any conflict in the evidence in his favor. If the evidence viewed in that manner establishes a prima facie case, *i.e.,* presents a question upon which reasonable minds could differ, the trial court's grant of a directed verdict must be reversed. *Light, supra; Cody v Marcel Electric Co,* 71 Mich App 714, 717; 248 NW2d 663 (1976), *lv den* 399 Mich 851 (1977).

In this case, plaintiff alleged at trial that defendants' actions in handling his claim for workers' compensation benefits created a cause of action for intentional infliction of emotional distress. This Court is faced with the question of whether there was sufficient evidence presented at the conclusion

of plaintiff's proofs to raise the question of whether defendants committed this tort.

Although there has been confusion regarding a cause of action for intentional infliction of emotional distress, as distinguished from damages for mental anguish incident to an independent tort, and the Michigan Supreme Court has not ruled on this issue, the Michigan Court of Appeals has delineated intentional infliction of emotional distress as a separate cause of action which is not necessarily parasitic to another cause of action as an aggravating element of damages. *Mosley v Federal Dep't Stores, Inc,* 85 Mich App 333, 338; 271 NW2d 224 (1978). See, also, *Ross v Burns* 612 F2d 271 (CA 6, 1980). The Court has explicitly adopted the definition found in the Restatement Torts, 2d, § 46, pp 71-72, which provides:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *"

See *Ross v Burns, supra,* p 273; *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390; 239 NW2d 380 (1976); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688, 692; 143 NW2d 612 (1966), *lv den* 378 Mich 733 (1966).

As explained in the Restatement, § 46, comment d, p 73:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." See *Warren, supra,* pp 390-391.

In defining the types of situations where these rules may be applied, the *Warren* Court explained:

"The extreme and outrageous character of a defendant's conduct may arise in a number of situations. It may occur by virtue of an abuse by defendant of a relationship which puts him in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's interests. The landlord-tenant relationship is one such situation. The tort may arise where defendant acts notwithstanding the knowledge that plaintiff is peculiarly susceptible to emotional distress because of defendant's actions. However, conduct may be privileged under some circumstances. For example, an actor is not liable 'where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress'. Restatement, *supra,* § 46, comment g, p 76." *Warren, supra,* p 391.

Based on these standards, the *Warren* Court held that a landlord's actions in verbally harassing and committing acts calculated to defeat plaintiff's attempts to sell her mobile home did not constitute the intentional infliction of emotional distress. The Court based its holding on the fact that causation of the plaintiff's distress was in conflict and that it was possible that the defendant was simply relying on his legal right to refuse a prospective

tenant. "It is not clear that an unfriendly attitude and name-calling constitute extremely outrageous conduct." *Warren, supra,* p 392. In *Fry v Ionia Sentinel-Standard,* 101 Mich App 725; 300 NW2d 687 (1980), the Court held that the publication of a newspaper story concerning the accidental death of plaintiff's husband, stating his name and the fact that a female body was found with him, did not constitute conduct sufficiently outrageous to cause liability for intentional infliction of emotional distress. Similarly, in *Ross v Burns, supra,* p 274, the Sixth Circuit Court of Appeals, applying Michigan law, held that the publication of an undercover narcotics agent's picture and identity in a newspaper along with a news article expressing strong views against such undercover activity was insufficient to fall within the meaning of "extreme and outrageous" conduct and, therefore, plaintiff did not state a claim upon which relief for intentional infliction of emotional distress could be granted.

Based on the case law cited, plaintiff herein was required to produce evidence of "extreme and outrageous" conduct, of defendants' injurious intent or reckless disregard for the consequences of their acts, of causation and of the actual experiencing of severe distress before his case could be submitted to the jury. *Ross v Burns, supra,* p 273.

As is obvious from the size of the transcript, which covered 12 days of trial, there was a great deal of testimony produced by plaintiff, along with a large number of exhibits. A large part of the testimony involved Allstate's internal operations, including testimony from several employees of Allstate and the introduction of numerous interoffice memoranda as exhibits. The efforts of Allstate to place plaintiff into a vocational rehabilita-

tion program, or settle his claim, were discussed at length. There was also a great deal of testimony concerning plaintiff's physical problems and the treatment he received therefor, as well as prior and subsequent physical injuries plaintiff suffered. In addition, there was extensive testimony concerning plaintiff's emotional condition.

Much of this testimony was not relevant to the tort of intentional infliction of emotional distress. It is clear that Allstate conducted an aggressive effort to place plaintiff into vocational rehabilitation or to settle his claim. The memoranda contained much language that is unflattering to plaintiff, indicating that Allstate may have viewed plaintiff as a malingerer who was planning to receive workers' compensation benefits for life. It also refers to plaintiff as being uncooperative and rude when contacted. This attitude on the part of the employees of Allstate, while insensitive and cynical, was not hostile and does not show an intent to inflict emotional distress on plaintiff. Further, plaintiff was never shown or made aware of these memoranda and was thus not injured by them. Plaintiff could not have suffered emotional distress from something of which he was never made aware.

When reduced to the testimony relevant to the question herein, only two acts are ultimately alleged to have been part of an intentional infliction of emotional distress: the termination of plaintiff's workers' compensation benefits when he failed to attend vocational rehabilitation and did not provide the proper medical authorization to justify this failure and the failure to give permission for treatment by Dr. Charnas for what plaintiff termed a "knot" in his back. As concluded by the trial judge, these actions do not come close to the

threshold required by Michigan case law for the tort alleged.

It is obvious that the termination of plaintiff's benefits for over three months was unjustified. It was, however, a mistake and, regardless of the fact that it was a stupid mistake, it does not present evidence of an intent to cause plaintiff severe emotional distress, and it was not done in reckless disregard of the consequences. When the mistake was discovered, benefits were renewed and back pay forwarded to plaintiff.

Likewise, the refusal to guarantee payment of plaintiff's doctor bills for a visit to Dr. Charnas without a report from the doctor stating that the treatment was for the work-related injury does not establish the alleged tort. It was not intended to cause plaintiff the requisite emotional distress, and it was not intended to harass him.

On the whole, there was no intent shown by the testimony presented nor was there any conduct that we would view as "extreme and outrageous" when compared to the case law cited herein. Clearly, although the conduct of Allstate, through its various employees, might at times be viewed by some as without feeling, others would view such conduct as proper attempts to protect Allstate's interests.

Affirmed.