FORD MOTOR CREDIT COMPANY v TRAFFIC TRANSPORT
ENGINEERING, INC

Docket No. 79788. Submitted October 17, 1985, at Detroit.—Decided
February 13, 1986.

Plaintiff, Ford Motor Credit Company, brought an action in the
Wayne Circuit Court against defendant, Traffic Transport Engi-
neering, Inc., after a deficiency resulted from the sale of collat-
eral that secured several loans which the defendant had con-
tractually guaranteed. The collateral was sold pursuant to an
order of the United States Bankruptcy Court after the original
debtor's bankruptcy. A jury returned a verdict in favor of
plaintiff for $152,929.26, representing the amount of the unpaid
balance due on the loans guaranteed by defendant. The jury
rejected plaintiff's claim for earned but unpaid finance charges
that had accrued on the unpaid balance from the time of the
default by the original debtor to the commencement of the suit
seeking to collect the deficiency. The trial court, Charles S.
Farmer, J., entered an order and judgment in accordance with
the jury's verdict and findings. Defendant appeals and the
plaintiff cross-appeals therefrom. *Held:*

1. The sales in the present case were not made by the
secured party, plaintiff, but by the trustee in bankruptcy, with
plaintiff acting as the trustee's agent. Thus, defendant's real
dispute is with the trustee and not the plaintiff. Therefore, the
defense that the sales were not commercially reasonable was
not properly asserted against plaintiff by defendant. Defendant

REFERENCES

Am Jur 2d, Commercial Code §§ 1 *et seq.,* 9 *et seq.*

Am Jur 2d, Contracts §§ 21 *et seq.*

Am Jur 2d, Secured Transactions §§ 1 *et seq.,* 135 *et seq.*

What is "commercially reasonable" disposition of collateral re-
quired by UCC § 9-504(3). 7 ALR4th 308.

Burden of proof as to commercially reasonable disposition of collat-
eral. 59 ALR3d 369.

Construction and operation of UCC § 9-502(2) authorizing secured
party in possesson of collateral to retain it in satisfaction of
obligation. 55 ALR3d 651.

See also the annotations in the ALR3d/4th Quick Index under
Contracts.

was a party to the bankruptcy proceedings and should have challenged the sales during those proceedings if it felt that they were irregular. The trial court correctly ruled that the defendant could not collaterally attack the commercial reasonableness of the sales.

2. The jury was properly instructed that they had to find that plaintiff complied with the terms of the repurchase agreements in order to be entitled to a deficiency judgment. The trial court did not effectively prevent the defendant from arguing that there had not been a proper tender under the repurchase agreements. The issue was properly left to the jury to decide.

3. The repurchase agreements were silent as to when plaintiff was required to tender the trailers and whether interest was to continue to accrue in the event of bankruptcy proceedings involving the principal debtor. Reviewing the evidence in a light most favorable to defendant indicates that reasonable minds could differ on the issue of plaintiff's entitlement to earned but unpaid interest charges during the period prior to tender. Thus, the issue was for the jury to decide.

Affirmed.

1. SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE — SALES OF COLLATERAL.

   The conclusive presumption of reasonableness which attaches to judicially-approved sales of collateral was intended to further the general intent behind Article 9 of the Uniform Commercial Code, which attempts to impede the dishonest disposition of collateral without overly restricting honest transactions with unnecessarily cumbersome procedures; the statute relating thereto specifically refers to the sale of repossessed collateral by the secured party (MCL 440.9507; MSA 19.9507).

2. SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE — SALES OF COLLATERAL — PRESUMPTIONS — COMMERCIAL REASONABLENESS.

   If the judicial approval of a sale of collateral emanates from a full and fair hearing, a court which collaterally reviews the disposition's reasonableness should not attempt to further investigate the individual aspects of the sale; the Uniform Commercial Code section relating thereto assumes that when there has been such a hearing all interests have had an opportunity to comment upon the arrangement for disposition of the collateral and that it is therefore reasonable to give such a sale a conclusive presumption of commercial reasonableness.

3. CONTRACTS — JUDICIAL CONSTRUCTION.

   It is the duty of the trier of fact to determine, if possible, the true

intent of the parties when a contract is open to construction as to a critical aspect.

*George E. Ward,* for plaintiff.

*Driggers, Schultz, Herbst & Paterson* (by *Thomas M. Malone, Raymond J. Sterling,* and *Andrew A. Paterson),* for defendant.

Before: BRONSON, P.J., and T. M. BURNS and C. W. SIMON, JR.,* JJ.

PER CURIAM. Ford Motor Credit Company sued the defendant, Traffic Transport Engineering, Inc., after a deficiency resulted from the sale of collateral that secured several loans which the defendant had contractually guaranteed. The collateral was sold pursuant to an order of the United States Bankruptcy Court after the original debtor's bankruptcy. Following a jury trial in Wayne County Circuit Court, a verdict was returned in favor of Ford Credit for $152,929.26, representing the amount of the unpaid balance due on the loans guaranteed by defendant. The jury rejected Ford Credit's claim for earned but unpaid finance charges that had accrued on the unpaid balance from the time of the default by the original debtor to the commencement of the suit seeking to collect the deficiency.

Defendant now appeals as of right, challenging a ruling by the trial court which prevented it from inquiring into the commercial reasonableness of the sales of the collateral and challenging the trial court's exclusion of evidence of Ford Credit's failure to seek relief from the automatic stay in a timely manner in order to comply with the tender requirements of the repurchase agreements, which formed the basis of defendant's guarantee obliga-

* Circuit judge, sitting on the Court of Appeals by assignment.

tions. Ford Credit has filed a cross-appeal claiming that the trial court erred in failing to direct a verdict in its favor concerning its claim for earned but unpaid finance charges.

Defendant first asserts that the trial court erred in ruling that under MCL 440.9507(2); MSA 19.9507(2) the defendant could not collaterally attack in state court the commercial reasonableness of the sales of the trailers that were made under the authority of the United States Bankruptcy Court. At trial, when defendant attempted to inquire into the method used by the trustee and Ford Credit to sell the trailers, the court ruled, based on § 9507(2), that such inquiries were improper because all sales had been made pursuant to the authority of the United States Bankruptcy Court and were thereby conclusively presumed to be commercially reasonable and free from collateral attack. Further, the trial court instructed the jury that the sales of the trailers was not a subject for their consideration and that they were only to determine the amount of any deficiency to which Ford Credit was entitled if they found that defendant had breached its contractual obligations.

Both parties to this appeal believe that the resolution of this issue turns on the proper application of § 9507(2). Section 9507(2) provides in part:

"A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable."

Initially we note that it could be argued that the

provisions of the Uniform Commercial Code do not apply to the facts of this case. Section 9507 specifically refers to the sale of repossessed collateral by the secured party. See 7 ALR4th 308. The sales in the present case were not made by the secured party, Ford Credit, but by the trustee in bankruptcy, with Ford Credit acting as the trustee's agent. Since the sales that the defendant complains of were made by the trustee, the defendant's real dispute is with the trustee and not Ford Credit. Thus, the defense that the sales were not commercially reasonable was not properly asserted against Ford Credit.

However, even if not directly applicable, we find that the conclusive presumption contained in 9507(2) is instructive to the resolution of this case. The conclusive presumption of reasonableness which attaches to judicially-approved sales was intended to further the general intent behind Article 9 of the Uniform Commerical Code, which attempts to impede the dishonest disposition of collateral without overly restricting honest transactions with unnecessarily cumbersome procedures. *Bryant v American National Bank & Trust Co of Chicago,* 407 F Supp 360 (ND Ill, 1976). If the judicial approval of a sale emanates from a full and fair hearing, the court which collaterally reviews the dispositions' reasonableness should not attempt to further investigate the individual aspects of the sale. Section 9507(2) assumes that when there has been such a hearing all interests have had an opportunity to comment upon the arrangement for disposition of the collateral and that it is therefore reasonable to give such a sale a conclusive presumption of commercial reasonableness.

In the present case, the subject trailers were sold pursuant to a plan developed by Ford Credit,

agreed to and supervised by the bankruptcy trustee and authorized by the United States Bankruptcy Court. Notwithstanding Ford Credit's power to negotiate sales for the trustee, all the sales were subject to the guidelines and procedural rules laid down by the trustee. Defendant was a party to the bankruptcy proceedings and should have challenged the sales during those proceedings if it felt that they were irregular. Therefore, we hold that the trial court was correct in ruling that the defendant could not collaterally attack the commercial reasonableness of the sales.

The defendant next claims that the trial court erred by excluding evidence that Ford Credit did not comply with the terms of the repurchase agreements by failing to make a timely tender of the trailers. We do not agree.

Under the terms of the repurchase agreements entered into by the parties, the defendant's obligation to repurchase the trailers, in the event of default by the original debtor, was subject to Ford Credit's tendering: (1) good title, (2) the trailer, and (3) the contract covering the trailer. At trial, when defendant initially attempted to inquire into why Ford Credit had not attempted to obtain an order modifying the automatic stay in bankruptcy to tender the trailers earlier than it did, the court ruled that such questions were irrelevant. Defendant argues that such evidence was relevant and should have been admitted.

The problem with the defendant's argument is that it is not fully supported by the record. The ruling which defendant refers to was made early in the proceedings. However, later in the trial, the court did not prevent the defendant from arguing to the jury that there had not been a proper tender under the repurchase agreements sufficient to give rise to the defendant's obligation to repur-

chase. In addition, defendant was permitted to make an unlimited closing argument that Ford Credit had not made a proper tender under the repurchase agreements. The jury was properly instructed that they had to find that Ford Credit complied with the terms of the repurchase agreements in order to be entitled to a deficiency judgment.

Therefore, we hold that the trial court did not effectively prevent the defendant from arguing that there had not been a proper tender. The issue was properly left to the jury to decide.

Finally, Ford Credit asserts on cross-appeal that the trial court erred in refusing to grant it a directed verdict on its claim for earned but unpaid interest. Our review of the evidence leads us to the conclusion that no error occurred.

Under the terms of the repurchase agreements, the defendant's obligation to repurchase did not arise until Ford Credit made a tender of the trailers. The repurchase agreements do not state when Ford Credit was required to tender and whether interest was to continue to accrue in the event of bankruptcy proceedings involving the principal debtor. When a contract is open to construction as to a critical aspect, it is the duty of the trier of fact to determine, if possible, the true intent of the parties. *Stroud v Glover,* 120 Mich App 258; 327 NW2d 462 (1982). A review of the evidence in a light most favorable to the defendant, *Holmes v Allstate Ins Co,* 119 Mich App 710; 326 NW2d 616 (1982), *lv den* 417 Mich 1018 (1983), indicates that reasonable minds could differ on the issue of Ford Credit's entitlement to earned but unpaid interest charges during the period prior to tender. Thus, the issue was for the jury to decide.

Affirmed.