### BDG INTERNATIONAL, INC., Plaintiff–Appellee,

v.

### Robert J. BOWERS and Auxiliary Graphic Equipment, Inc., Defendants–Appellants.

### No. 11CA1581

Colorado Court of Appeals, Div. I.

Announced April 11, 2013

Machol & Johannes, LLC, Jacques A. Machol, III, Denver, Colorado, for Plaintiff–Appellee

Law Office of Professor Thomas D. Russell, Ph.D., LLC, Thomas D. Russell, Denver, Colorado, for Defendants–Appellants

Opinion by JUDGE TAUBMAN

¶ 1 Defendants, Robert J. Bowers and Auxiliary Graphic Equipment, Inc. (AGE), appeal the judgment entered after a bench trial in favor of plaintiff, BDG International, Inc. (BDG). We affirm.

## I. Background

¶ 2 AGE purchased printing presses from a seller in Australia for a client located in Colorado. AGE contracted with Fortner Graphic Solutions, Inc. (Fortner) to dismantle the printing presses and transport them to Colorado. Fortner then subcontracted with BDG and other firms to perform its contractual duties. BDG was responsible for trans-oceanic shipping, and another company was responsible for packing and inland transportation to the client's site in Colorado.

¶ 3 Fortner failed to pay all costs for inland and ocean freight for the dismantling and shipping of the presses. As a consequence, a third party asserted a lien against the presses for packing and inland transportation and assigned its lien rights to BDG. BDG also asserted a lien under Illinois law and a general lien based on the terms of service in its contract with Fortner.

¶ 4 To obtain release of the liens, defendants executed a Cargo Release Guarantee and Extension of Credit. Bowers also executed a Personal Guarantee.

¶ 5 BDG brought this action after defendants failed to make payment as required by these agreements. BDG sought the principal amount due under the agreements, interest, and collection costs of forty percent that it had agreed to pay a third party to obtain payment on the agreements.

¶ 6 Defendants filed a third-party claim against Fortner seeking a judgment against it for any and all damages assessed against them, including interest and attorney fees. Defendants had previously filed a lawsuit in

El Paso County District Court No. 10CV1704, Honorable Timothy Schutz, Judge

Missouri against Fortner that sought similar relief and had obtained a judgment that included the freight charges.

¶ 7 Following a trial to the court, the court entered a judgment in favor of BDG and against defendants, jointly and severally, in the principal amount of $141,000, plus pre-judgment interest of $16,787.11, collection costs of $56,400, and post judgment interest at the rate of eight percent.

## II.   Jurisdiction Under Maritime Law

¶ 8 Defendants contend that the trial court lacked subject matter jurisdiction over this case because it involved admiralty or maritime law and that exclusive jurisdiction resided with the federal courts.   We disagree.

### A.   Subject Matter Jurisdiction

¶ 9 Subject matter jurisdiction concerns a court's authority to deal with the class of cases in which it renders judgment. *Horton v. Suthers*, 43 P.3d 611, 615 (Colo. 2002).   A challenge to a court's subject matter jurisdiction is not waivable, and may be raised for the first time on appeal. *Kirbens v. Martinez*, 742 P.2d 330, 334 n. 8 (Colo. 1987).   Resolution of this issue is one of law, and our review is de novo. *See People v. Valdez*, 68 P.3d 484, 485 (Colo.App.2002).

¶ 10 Whether a state court can hear an admiralty case raises an issue of subject matter jurisdiction. *See* 1 Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 3–2, at 115 (5th ed.2011).   Thus, even though the issue has been raised for the first time on appeal, we must address whether the trial court had subject matter jurisdiction to consider this case. *See Kirbens*, 742 P.2d at 334 n. 8; *Matheson v. City of Hoquiam*, 170 Wash.App. 811, 287 P.3d 619, 623–24 (2012) (addressing whether trial court had subject matter jurisdiction in case where issue of admiralty jurisdiction was raised for first time on appeal); *see also Jarvis & Sons, Inc. v. Int'l Marine Underwriters*, 768 N.W.2d 365, 369–70 (Minn.Ct.App.2009) (sua sponte addressing whether case fell within federal admiralty jurisdiction).

### B.   Jurisdiction Proper in the District Court

¶ 11 The United States Constitution's Admiralty Clause provides that the federal "judicial [p]ower shall extend ... to all [c]ases of admiralty and maritime [j]urisdiction." U.S. Const. art.  III, § 2, cl. 1. Federal law grants the federal district courts "original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*"   28 U.S.C.  § 1333(1) (emphasis added).

¶ 12 The grant of original jurisdiction to the federal district courts in admiralty and maritime civil cases is exclusive only as to those maritime causes of action begun and carried on as proceedings in rem against a ship or its cargo. *See Madruga v. Superior Court*, 346 U.S. 556, 560, 74 S.Ct. 298, 98 L.Ed. 290 (1954); *see also Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 123–24, 44 S.Ct. 274, 68 L.Ed. 582 (1924).   Accordingly, the state courts do not have jurisdiction over in rem proceedings involving admiralty or maritime causes of action. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 452, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001); G. Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 1–13, at 38 (2d ed.1975).

¶ 13 The "saving to suitors" clause reserves to the state courts the right of a common law remedy where the common law is competent to give it. *See* 1 *Admiralty & Maritime Law* § 4–4, at 238; *The Law of Admiralty* § 1–13, at 37.   This clause has been interpreted to provide that if a proceeding is in personam and no remedy is sought against the ship itself, the case is not within the exclusive jurisdiction of the federal courts, and state courts administering common law remedies have concurrent jurisdiction under the saving to suitors clause. *See Rounds v. Cloverport Foundry & Mach. Co.*, 237 U.S. 303, 308–09, 35 S.Ct. 596, 59 L.Ed. 966 (1915); *In re Chimenti*, 79 F.3d 534, 537 (6th Cir.1996); 1 *Admiralty & Maritime Law* § 4–4, at 238 ("[s]ince the common law is competent in all cases where the suit is *in personam*, a plaintiff in such causes may elect either to proceed in admiralty or to

bring an ordinary civil action, either at law in state court or in a federal district court" (footnote omitted)). The saving to suitors clause "allows state courts to entertain *in personam* maritime causes of action," subject to the condition that any remedy provided be consistent with federal maritime standards. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222–23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Madruga,* 346 U.S. at 560–61, 74 S.Ct. 298; *see also Stainless Steel & Metal Mfg. Corp. v. Sacal V.I., Inc.,* 452 F.Supp. 1073, 1076 (D. Puerto Rico 1978) ("a suitor who holds an in personam claim, which might be enforced by an action in personam in admiralty, may also bring suit, at his election, in the common law courts, that is, by ordinary civil action in the state courts").

¶ 14 Defendants, citing *Deval Denizcilik Ve Ticaret A.S. v. Agenzia Tripcovich S.R.L.,* 513 F.Supp.2d 6 (S.D.N.Y.2007), argue that the agreements at issue here involved maritime contracts, and thus the dispute here must be resolved in the federal courts. In *Deval,* which involved circumstances similar to this case, the federal district court found that a guarantee issued by a bank to free cargo from the threat of a maritime lien was a maritime contract and that admiralty jurisdiction was proper.

¶ 15 The *Deval* court, however, did not address whether the federal courts had exclusive jurisdiction or whether a state court would have concurrent jurisdiction under the saving to suitors clause. *See, e.g., Thornes v. Socony Vacuum Oil Co.,* 37 F.Supp. 616, 616 (S.D.N.Y.1940) (noting that in New York "an action in personam arising out of a maritime contract could be prosecuted in the state courts"); *Light v. Schmidt,* 84 Mich.App. 51, 269 N.W.2d 304, 306–07 (1978) (holding that maritime contract fell within saving to suitors clause and that jurisdiction was proper in the state court); *Jarvis & Sons,* 768 N.W.2d at 369–70 (concluding that state jurisdiction was proper under the saving to suitors clause because action was brought in personam).

¶ 16 Thus, although *Deval* supports defendants' position that the agreements here are maritime in nature, we do not find the deci-

sion to be persuasive on the issue of exclusivity of federal jurisdiction.

¶ 17 Defendants also argue that based on the decision in *Logistics Management, Inc. v. One (1) Pyramid Tent Arena,* 86 F.3d 908, 914 (9th Cir.1996), BDG was a non-vessel operating common carrier (NVOCC)[1] and could assert an in rem maritime lien for unpaid freight against the cargo it was responsible for transporting. Thus, because the underlying agreements here are founded upon in rem obligations and rights, they argue that this action is also in rem in nature and subject matter jurisdiction lies exclusively with the federal courts. However, we find *Logistics* distinguishable because the NVOCC in that case asserted an action in rem against the cargo rather than, as here, an action in personam to obtain payment under a set of agreements.

¶ 18 Additionally, the mere fact that BDG could have asserted a maritime lien does not automatically confer the same status to the agreements at issue here. *See Great E. Shipping Co. v. Binani Cement Ltd.,* 655 F.Supp.2d 395, 398 (S.D.N.Y.2009) (noting that courts will not look to the subject matter of the original contract to find a maritime connection). A particular agreement or transaction may give rise to both personal liability and a maritime lien. *See The Law of Admiralty* § 1–12, at 36. Furthermore, each agreement or transaction must be reviewed separately to determine its status. *See* 1 *Admiralty & Maritime Law* § 3–10, at 183–84, 191 (whether a contract is maritime is determined through a case-by-case approach; "[a] surety agreement is held not to be an admiralty contract, since the obligation of the surety is only to pay damages in the event of liability on the underlying contract").

¶ 19 Here, BDG sought to enforce the Cargo Release Guarantee and Extension of Credit signed by defendants and the Personal Guarantee executed by Bowers. Although this action originates from Fortner's failure to pay third parties for the trans-oceanic transport of the printing presses, which is

---

1. An NVOCC is a consolidator that acts as a common carrier by arranging for the transporta-

tion of goods from one port to another. *Logistics Mgmt.,* 86 F.3d at 910 n. 1.

maritime in nature, it does not seek to enforce a remedy against the ship or its cargo.

¶ 20 Thus, contrary to defendants' arguments, this action is not in rem in nature, but rather is a proceeding in personam because it seeks to enforce the contractual agreements against defendants personally rather than against the cargo or another type of property of a maritime nature. Accordingly, jurisdiction in this case does not lie exclusively in the federal courts. *See Lewis*, 531 U.S. at 452, 121 S.Ct. 993.

¶ 21 Therefore, under these circumstances, we conclude that the trial court did not lack subject matter jurisdiction to hear this case. *See Madruga*, 346 U.S. at 560–61, 74 S.Ct. 298 ("state courts [are] 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation").

### III. Finality of Judgment

¶ 22 Defendants also contend that the judgment is not final because it does not finally dispose of the litigation. Defendants assert that the trial court retained jurisdiction over the action because it retained authority to decide issues concerning the allocation of any money that might be collected on the Missouri judgment. We are not persuaded.

¶ 23 The court of appeals has initial jurisdiction over appeals from "final judgments of ... the district courts." Section 13–4–102(1), C.R.S.2012; C.A.R. 1(a)(1).

¶ 24 A final judgment "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Stillings v. Davis*, 158 Colo. 308, 310, 406 P.2d 337, 338 (1965); *see State ex rel. Salazar v. Gen. Steel Domestic Sales, LLC*, 129 P.3d 1047, 1049 (Colo.App.2005).

¶ 25 Here, the judgment entered by the trial court resolved BDG's claim and the third-party claim, dismissed the counterclaim with prejudice, and awarded a sum certain for damages, collection costs, and prejudg-

ment interest. Therefore, it completely determined the rights of the parties involved in the proceeding and is final. *Stillings*, 158 Colo. at 310, 406 P.2d at 338.

¶ 26 Although the trial court provided directions with regard to how the proceeds of any sums recovered by Bowers or AGE should be applied to the judgments they obtained against Fortner in Colorado and Missouri, those directions do not alter the finality of the underlying judgment. Rather, those directions address the satisfaction of the judgment, which involves actions post judgment. Under defendants' interpretation, although the judgment would be executable, the right of review could be delayed indefinitely depending on the success of collections efforts by either Bowers or AGE on the Missouri judgment.

¶ 27 Therefore, we will not dismiss the appeal for lack of finality.

### IV. Economic Duress

¶ 28 Defendants also contend that the trial court erred in not finding the contracts voidable on the basis of duress. We disagree.

¶ 29 Both parties agree that the doctrine of economic duress, as set forth in the case of *Rich & Whillock, Inc. v. Ashton Development, Inc.*, 157 Cal.App.3d 1154,204 Cal.Rptr. 86, 89 (1984), is applicable here.[2] Under that standard, the trial court's judgment will be upheld if it is consistent with the applicable legal principles and is supported by substantial evidence. *Id.* at 91.

¶ 30 As set forth in *Rich*, the doctrine of economic duress may apply when a sufficiently coercive wrongful act causes a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. *Id.* at 89. It includes equitable notions of fairness and propriety which preclude the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value. *Id.* at 90.

¶ 31 Here, the liens BDG and the third party placed on the cargo represented the

2. The agreements provide that they are governed by the law of California.

amounts they had to pay to others to bring the cargo into port and place it into storage. Unlike the circumstances in *Rich*, neither party was seeking to exploit business exigencies to obtain disproportionate exchanges of value. Rather, the lienholders were simply seeking to recover the amounts they were obligated to pay to fulfill their contractual obligations. While defendants may have felt economic pressure to sign the releases in order to obtain possession of the cargo, the lienholders did not engage in wrongful conduct to coerce payment from defendants.

¶ 32 Therefore, because the trial court's judgment is consistent with the applicable legal principles and is supported by substantial evidence, we will not overturn it upon review. *See id.* at 91.

## V. Judgment Setoff

¶ 33 Defendants contend that the trial court erred in failing to set off the judgments in this case against one another. Again, we disagree.

¶ 34 In *Husband v. Colorado Mountain Cellars, Inc.*, 867 P.2d 57, 61 (Colo.App.1993), a division of this court stated: "If a judgment is entered in favor of each of the opposing parties, it is generally proper to enter a single judgment for the net difference between those judgments."

¶ 35 We agree with BDG that the element missing here is a judgment entered in favor of each of the opposing parties. Although the judgments in this case are identical with regard to the principal amount of the judgment, interest, and collection cost, the parties are not identical. In the first judgment, defendants lost to BDG, but in the second judgment they recovered the same amount against Fortner, not BDG.

¶ 36 Therefore, contrary to defendants' contention, the principle of offsetting judgments does not apply because the judgments are not against the same parties.

## VI. Attorney Fees as Collection Costs

¶ 37 Defendants also contend that the trial court erred in awarding BDG collection costs, primarily, attorney fees, amount-

ing to forty percent of the principal due under the agreements. We disagree.

[14–16] ¶ 38 California law provides that the determination of the reasonableness of a request for attorney fees is left to the sound discretion of the trial court and will not be disturbed on review unless it is clearly wrong. *See PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 95 Cal.Rptr.2d 198, 997 P.2d 511, 518 (2000); *see also Hartman v. Freedman*, 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979) (applying similar standard and holding that an award of attorney fees that was more than fifty percent of the judgment on the merits was not unreasonable). In awarding attorney fees, the trial court may consider the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case. *PLCM*, 95 Cal. Rptr.2d 198, 997 P.2d at 519; *see also Hartman*, 197 Colo. at 281, 591 P.2d at 1322 (listing similar factors). The existence of a fee arrangement, whether contingent or fixed, is one factor to consider in determining the reasonableness of a requested fee. *See Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1316 (1977); *see also Bakehouse & Assocs., Inc. v. Wilkins*, 689 P.2d 1166, 1168 (Colo.App.1984).

¶ 39 As pertinent here, the Personal Guarantee signed by Bowers included the following provision:

> In the event of default by Original Debtor, the Guarantor agrees to pay all costs and expenses incurred by the Creditors, including all reasonable attorney fees for the collection of the Original Debtor's debt under the "Cargo Release Guarantee and Extension of Credit" and this Agreement.

¶ 40 The Cargo Release Guarantee and Extension of Credit agreement included a similar provision:

> In the event it is necessary for CREDITORS to retain the services of an attorney or any other consultants in order to enforce this AGREEMENT, or any portion thereof, DEBTORS agreed to pay to CREDITORS any and all costs and expenses, including, without limitation, attor-

neys' fees, incurred by CREDITORS as a result thereof.

¶ 41 On appeal, defendants contend that the trial court erred in failing to use the lodestar method in determining the reasonableness of BDG's request for collection costs, including attorney fees, equaling forty percent of the principal due under the agreements.

¶ 42 The lodestar method for an attorney fees award involves determining the number of hours reasonably expended on the case multiplied by the reasonable hourly rate. *See PLCM,* 95 Cal.Rptr.2d 198, 997 P.2d at 519; *see also Tallitsch v. Child Support Servs., Inc.,* 926 P.2d 143, 147 (Colo.App. 1996). However, that amount may be adjusted based on a consideration of factors specific to the case, including whether there is a fee arrangement. *PLCM,* 95 Cal.Rptr.2d 198, 997 P.2d at 519; *Tallitsch,* 926 P.2d at 147.

¶ 43 The California courts have addressed whether a party may recover the amounts charged by a collection agency or an attorney to recover a debt. Although such fees have been subject to challenge, they have been upheld where they are expressly authorized by agreement and do not violate the law. *See, e.g., Brown v. Prof'l Cmty. Mgmt., Inc.,* 127 Cal.App.4th 532, 25 Cal.Rptr.3d 617, 622 (2005) (explaining that a management company's fees are not illegal unless they exceed the homeowners association's "costs," and the association's costs "necessarily include the fees and profit the vendor charges for its service"); *see also Cnty. Workers Comp. Pool v. Davis,* 817 P.2d 521, 527 (Colo.1991) (upholding trial court's order requiring workers' compensation carrier to pay same percentage of attorney fees incurred by worker in bringing tort action against third party).

¶ 44 In awarding BDG its collection costs, including attorney fees, the trial court considered the amount BDG had agreed to pay a third party to collect on the liens and noted that it was the same amount that AGE had sought and received in the Missouri action against Fortner. In addition, defendants did not specifically argue that the trial court should apply the lodestar method in determining the reasonableness of the attorney fee request, but rather asserted that the court misconstrued the contractual provisions and that the forty percent fee should be subtracted from the judgment because otherwise they became "risk takers" in the process.

¶ 45 Nevertheless, under the circumstances presented here, we conclude that in awarding attorney fees the trial court appropriately considered BDG's fee arrangement with the third party, as well as the amounts sought in the Missouri litigation by AGE. Accordingly, we will not disturb that award on review. *See Serrano,* 141 Cal.Rptr. 315, 569 P.2d at 1316–17; *see also Hartman,* 197 Colo. at 281, 591 P.2d at 1322.

¶ 46 Finally, in light of our determination, we need not address defendants' request for appellate attorney fees.

¶ 47 The judgment is affirmed.

JUDGE GRAHAM and JUDGE HAWTHORNE concur.