Anthony ROBY, Leonard Langs, Reede C. Cowherd, Stanley E. Durr, Keith B. Downing, and Diane M. Durr, Plaintiffs,

v.

The CENTER COMPANIES, Defendant.

No. 86–CV–74191–DT.

United States District Court,
E.D. Michigan, S.D.

Dec. 18, 1987.

Dykema, Gossett, Spencer, Goodnow & Trigg by Martin Jay Galvin, Richard L. Hurford, Kelly Draepel, Detroit, Mich., for defendant.

## OPINION

GILMORE, District Judge.

This is a race and sex discrimination in employment suit brought by five black males and one black female against their employer under 42 U.S.C. § 1981 and Michigan's Elliott–Larsen Act.

An earlier order of this Court in May 1987 granted defendant's motion to dismiss on several counts. The remaining allegations before the Court are those of race and sex discrimination, and intentional inflection of emotional distress. The plaintiffs are Stanley Durr, Keith Downing, Reede Cowherd, Diane Durr, Leonard Langs, and Anthony Roby.

Before the Court are motions for summary judgment as to plaintiffs Stanley Durr, Diane Durr, Downing, Cowherd, and Langs, and a motion to dismiss as to plaintiff Roby for failure to obey a court order.[1] In addition, there are motions to dismiss the complaint due to abusive litigation practices, and to sever. Also, there are various plaintiffs' motions. Because the Court finds that summary judgment should be granted against Stanley Durr, Diane Durr, Leonard Langs, Reede Cowherd, and Keith Downing, and because the Court concludes that plaintiff Roby's case must be dismissed for failure to cooperate in being deposed, the other motions before the Court are moot.

## I

Defendant is a company that provides management, security, and consulting services to shopping centers located in Northland, Eastland, Westland, and Southland malls in the Detroit area. All the male plaintiffs were hired in October 1980 as security officers, and the female plaintiff

Thomas, Taylor & Houston by Charlie C. Taylor, Gilbert Bass, Detroit, Mich., for plaintiffs.

1. Pursuant to this Court's scheduling order, entered in December 1986, the discovery period ended on August 1, 1987. Defendant's motions were filed on, or shortly before, the motion cut-off date of September 1, 1987.

was hired in the same month as a dispatcher.

Plaintiffs' very sketchy complaint alleges that defendant denied plaintiffs equal employment opportunities because of race and sex, and discriminated against them by failing to promote black employees to position of sergeant; by giving subjective evaluations; by giving unvalidated written tests that were used as a tool to keep plaintiffs from getting promotions; by subjecting plaintiffs to harsher discipline than whites; by allowing white supervisors to discourage plaintiffs from applying for higher paying positions; by placing plaintiffs on probation more often than whites; by giving plaintiffs less desirable shift and working assignments than whites; by terminating employment because of race; and by subjecting plaintiffs to a hostile and discriminatory working atmosphere where they were called derogatory names, black employees were assaulted by white employees, there was an absence of black sergeants, and black females were not permitted to become security officers.

Essentially, plaintiffs' claims fall into three broad categories:

1. Disparate treatment on the basis of race (and sex for plaintiff Diane Durr) in the area of promotions, evaluations, written testing, discipline, encouragement from management to be upwardly mobile, scheduling of shifts, and termination of employment.

2. The existence of a hostile and discriminatory working environment resulting from the use of racially derogatory terms in the work place, assault on blacks by whites, a dearth of black sergeants, and the lack of black female security guards.

3. Intentional infliction of emotional distress.

In support of its motion for summary judgment as to all plaintiffs except Roby, defendant relies on the affidavit of a Lorraine Latour, defendant's vice-president of personnel, supported by numerous exhibits including defendant's business records, and references to depositions of the plaintiffs that are contained in more than 10 volumes of transcripts.

Plaintiffs' response to a large extent is to conclusorily assert that they have stated a prima facie case of discrimination. While they make many factual allegations, they offer little or no evidence to back their assertions. A recurring theme in plaintiffs' response is that defendant failed to produce Lorraine Latour for deposition, and failed to produce documents, in violation of the magistrate's order compelling discovery. After careful consideration, the Court finds no merit to plaintiffs' charges that defendant failed to cooperate in discovery. This matter is discussed more fully below.[2]

## II

The situation of each of the plaintiffs, as revealed by the evidence submitted in the opposing briefs, is briefly summarized, seriatim, below.

### A. Stanley Durr

Durr made two applications for promotions, one in 1981 and one in 1985. In 1981, a more-qualified applicant was promoted, and in 1985 Durr was ineligible for promotions because he was on probation for excessive tardiness. The testimony of Lorraine Latour in her affidavit buttresses these representations.

On Durr's claim of discriminatory evaluations, defendant claims there is no evidence of disparate treatment as revealed by Durr's deposition testimony that he believed his review "was done racially because it was done by—nobody here is a black person." With reference to Durr's claim that he was subjected to harsher discipline because of his race, defendant points out that Durr was unable to point to any particular instance where he was treated worse than a similarly-situated white employee. Durr eventually was fired, but he has pointed to no facts to indicate that the termination was motivated by any racial considerations. The record is clear that Durr had a long history of tardiness,

2. See pp. 674–676, *infra*.

excessive absences, and unsatisfactory job performance, which justified the eventual termination.

In addition, Durr has failed to produce evidence of a hostile and discriminatory work environment. In large part, Durr responds to defendant's motion by claiming that defendant has refused to release records, has destroyed records, and that Latour's affidavit cannot be relied upon because it is hearsay. As will be discussed below, the Court finds this response unavailing. Durr has failed to produce any specific evidence or deposition testimony to refute defendant's position, which is supported by Latour's affidavit and the deposition testimony in the record. Durr has pointed to nothing in the record to refute defendant's affidavit and references to deposition testimony to show that actions taken with Durr were not racially motivated. For the reasons discussed below, summary judgment is justified as to plaintiff Stanley Durr.

### B. Keith Downing

■ Downing complains of bad scheduling that was racially motivated. Latour's affidavit establishes, however, that scheduling is done on a rotating basis, and everyone likely is unhappy at some time. Downing also complains because he has not been promoted. The evidence shows, however, that Downing never applied for promotions. There is no showing in the record that there was any discrimination in his work assignments.

Downing also claims that he was subjected to a hostile and discriminatory work environment, but he has admitted in deposition that he never reported to his supervisors, or officially complained, of several incidents when racially derogatory language was used. There is no showing in the record that Downing ever apprised management of the hostile and discriminatory atmosphere that he claims he was subjected to. As with plaintiff Durr, above, the Court finds plaintiff Downing has simply failed to offer any factual evidence to refute defendant's well supported position that its actions with respect to Downing were not racially motivated. For reasons more fully discussed below, the Court will grant summary judgment in defendant's favor as to plaintiff Downing.

### C. Reede Cowherd

■ Cowherd claims he was discriminated against in promotions in 1984 and 1986 for two different positions, and in April of 1987. He claims he was not promoted because of race, but supports his allegation with nothing more than his July 1986 EEOC complaint.

In its motion, defendant offers Latour's affidavit to establish that, on the promotion issue, in each case a better-qualified person was selected for the position. Also, Cowherd admitted in deposition that he really didn't know what qualifications the other applicants had. Furthermore, various exhibits of defendants indicate that Cowherd actually withdrew his April 1987 application, prompting Latour to call him to encourage to resubmit it. Cowherd told Latour he had withdrawn it because of a personal situation, and, even if she offered him the position, he wouldn't take it. Ultimately, Cowherd reconsidered, and, upon resubmission of his application in June of 1987, he was interviewed. However, one day later Cowherd violated company policy by chasing a suspect off shopping mall property, resulting in a five-day suspension and six months probation. This precluded the possibility of granting him a promotion. To support his charges of discrimination, Cowherd offers a primarily subjective opinion that he was better qualified than candidates who were promoted over him. Cowherd produces nothing tending to substantiate this.

Cowherd's deposition testimony reveals that he cannot factually support his allegation that defendant has used written tests to discriminate against blacks. When asked to explain how the tests were discriminatorily used, Cowherd responded: "I really don't know ... I think it was ... Because I'm black ... I feel it was...." Defendant explains, through Latour's affidavit and other exhibits, that every employee had to take an objective "general duty manual test" to keep them up-to-date.

On the topic of discipline, Cowherd admitted in deposition that he was disciplined in 1982 for allegedly accepting lost and found property from a store owner, which he then allegedly failed to turn over to defendant. He testified that he thought the discipline he received—a one-day suspension and three weeks' probation—was too harsh. As mentioned above, Cowherd was also disciplined for violating company policy by chasing a suspect off shopping mall property. In support of its motion, defendant has provided evidence that similarly-situated whites have been disciplined similarly to Cowherd. Cowherd fails to rebut defendant's position with any evidence tending to indicate that considerations of race motivated defendant's decision to discipline him.

To support his claim of a hostile and discriminatory work atmosphere, Cowherd offers his deposition testimony that he has heard the word "nigger" used at work, but he admitted it was not directed at him, and the speaker later apologized. He also admitted he never reported these incidents to management.

After reviewing the motion and the response as they relate to plaintiff Cowherd, the Court finds that, in support of his charges of discrimination, Cowherd offers primarily his subjective opinion that defendant's actions were discriminatorily motivated, but he can produce no evidence tending to substantiate this. The Court will grant summary judgment for defendant as against plaintiff Cowherd for reasons more fully discussed below.

### D. Diane Durr

■ Durr testified in deposition that she had applied several times for promotions, but she admitted she didn't know who got the job or what the qualifications of the persons were who got the job, and/or how her qualifications compared with the qualifications of those who were promoted. She also applied for the position of Center Administrator in 1985, which was given to a white woman, but Durr admits she did not know what the white woman's qualifications were. In her affidavit, Latour states that, in every case where Durr applied and was rejected, the person chosen was more qualified than Durr, and that was the basis for defendant's decision, not race or sex. More specifically, Latour states that the Center Administrator position required a person with a college background in business and accounting, and Durr admitted her post high school education consisted of only one community college English course, some typing classes, and some police training.

Durr also claims racial discrimination in the use of testing, but she has failed to support this by affidavit, or other evidence tending to show the existence of discrimination in the testing method. Regarding Durr's claim that she was treated discriminatorily in assignments, her deposition testimony is simply that she did not like working overtime, and, when she complained, the schedule was adjusted to her satisfaction. In the Court's view, Durr has produced nothing tending to show racial discrimination or sex discrimination against her. She claims that, because defendant has secreted requested information, it is impossible to determine who would have been more qualified than plaintiff for the position for which she applied, but this claim is not supported by the record, as is discussed below. There is no basis to show racial or sex discrimination in her treatment. Therefore, defendant's motion for summary judgment will be granted as against Plaintiff Diane Durr, as it more fully discussed below.

### E. Leonard Langs

■ Langs claims that he has applied for promotions about 12 times, and has been rejected, while whites were always promoted. However, he offers no facts to rebut defendant's position, as stated by Latour in her affidavit, that in each case Langs was passed over for promotion in favor of more qualified applicants, and not based on considerations of race.

In support of his claim that an anti-black animus permeated the work atmosphere, for which defendant can be held responsible, Langs claims that at an afternoon shift briefing in October 1986 he witnessed a Ku Klux Klan rally presided over by

Sergeant Gasiewski. Langs offers the affidavit of a white male who relates that Sergeant Gasiewski "started the briefing by taking his nightstick, banging it on the desk, and saying 'This meeting of the KKK will now come to order.'" The affiant also reports that Sergeant Gasiewski insisted that he first be acknowledged as "the Imperial Wizard" before he would listen to anyone. None of this is set forth in plaintiffs' complaint. However, Langs testified to this occurrence in his deposition. In responding to defendant's motion, Langs does not dispute that defendant first learned of this incident when defendant deposed him in connection with this lawsuit. Further, defendant represents through the Latour affidavit that, upon hearing Langs' testimony, defendant immediately investigated, and Sergeant Gasiewski was warned that defendant would not tolerate such incidents.

Langs also asserts that white officers were given open-book tests, and he was given a closed book examination, and "on occasion was locked in a room while his test was being administered." In response to defendant's motion, however, he has pointed to nothing in the record to support these allegations.

Also in reference to his claim that he was subjected to discriminatory testing, Langs testified in deposition that he had to take several tests in 1986 as part of retraining. However, again he points to no evidence that this constituted disparate treatment on the basis of race. In her affidavit, Latour states that plaintiff was placed in retraining, as would any officer be, because he had demonstrated lack of knowledge of the job through poor performance. Simply stated, the Court finds that there is no showing, other than allegations by Langs, that he was subjected to discriminatory treatment. On the other hand, defendant has supported, by affidavit and by reference to depositions, facts tending to establish Langs was not subjected to discriminatory treatment.

Defendant is entitled to summary judgment as to this plaintiff. See discussion, *infra*.

## III

Defendant's representations and position on this motion for summary judgment are supported by the factual record, and are based either on the affidavit of Lorraine Latour or the depositions of the various parties. Plaintiffs' response is largely conclusory, and generally fails to direct the Court's attention to particular places in the record as factual support for their position. They claim that they were treated differently from similarly-situated whites with respect to promotions, evaluations, testing, discipline, encouragement from management, scheduling, and termination, but fail to provide evidence supporting such an inference. Their response to defendant's motion on their claims of hostile work environment and intentional infliction of emotional distress is similarly defective.

The Supreme Court has recently elaborated on the proper standard for reviewing a defendant's motion for summary judgment in *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex*, the Court rejected the circuit court's holding that a defendant moving for summary judgment must support his motion with an affirmative evidentiary showing, tending to negate the essential elements of plaintiff's case. Instead, the Court said:

> The burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

*Id.* 477 U.S. at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.

Once the moving defendant makes this showing, whether defendant relies solely on the pleadings, depositions, answers to interrogatories, or admissions on file, the burden passes to the nonmoving party to go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial":

> In our view, the plain language of Rule 56(c) mandates the entry of summary

judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. In such a situation, there can be "no genuine issues as to any material fact" since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.

*Id.* 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

The *Celotex* Court likened the standard for granting summary judgment to the standard for a directed verdict in a jury trial, citing *Anderson v. Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214, where the Court stated:

The inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.

In closing, the *Celotex* Court emphasized the value of the summary judgment procedure:

Summary judgment procedure is properly regarded not as a disfavored procedural short cut but rather as an integral part of the Federal Rules as a whole which are designed to "secure the just, speedy and inexpensive determination of every action."

*Id.,* 477 U.S. at 327, 106 S.Ct. at 2555, 91 L.Ed.2d at 276.

The method of proceeding in an employment discrimination case alleging disparate treatment is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It has been held that the *McDonnell Douglas* principles on order and allocation of proof apply in Section 1981 cases. *Long v. Ford Motor Company,* 496 F.2d 500 (6th Cir.1974).

Under *McDonnell Douglas,* plaintiff must first present a prima facie case giving rise to an inference of discrimination. Then, the burden of producing evidence shifts to the defendant to demonstrate it had a legitimate nondiscriminatory reason for its actions. Finally, plaintiff has the opportunity to rebut this by presenting evidence that defendant's reasons are a mere pretext.

Importantly, in alleging disparate treatment, to establish a prima facie case a plaintiff must present facts tending to show that, as a member of a protected class, he was treated differently than similarly situated non-minority individuals. *Id.* 411 U.S. at 802, 93 S.Ct. at 1824.

Applying these basic principles to the present case, the Court finds plaintiffs have failed to present any evidence tending to show that any one of them was treated differently than a specific similarly situated white or male with respect to any of the areas in which they allege the received disparate treatment: promotions, evaluations, testing, discipline, encouragement from management, scheduling, and termination.

Responding to this motion, plaintiffs have repeatedly asserted that defendant's withholding of documents makes it impossible to compare their situations to that of anyone else. This argument is without merit. First, documents were made available. Second, Lorraine Latour was not deposed because of plaintiffs' failure to follow provisions provided by the Magistrate, as discussed below. Third, one does not bring a complaint alleging discriminatory treatment without *some* evidence giving rise to an inference of discrimination. One may not bring a case hoping through discovery to learn that one actually has an arguably successful law suit. Plaintiffs have repeatedly failed to demonstrate to the Court how they were qualified for positions they did not get, which were later given to whites or males. Similarly, plaintiffs cannot point the Court to specific instances of apparently discriminatory evalu-

ations, testing, and discipline. They simply do not compare themselves to similarly situated whites. Instead, they insist on repeating their allegations to the point of creating confusion. However, creating a confused picture is insufficient to withstand a motion for summary judgment. Under *Celotex*, plaintiffs have the duty to designate specific facts showing there is a genuine issue for trial. In failing to point to the specific facts, plaintiffs have failed to make a showing sufficient to establish the existence of an element essential to their case, and upon which they will bear the burden of proof at trial. It is therefore clear, based upon the briefs and the arguments in this case, that defendant is entitled to judgment as a matter of law on the claims of disparate treatment of plaintiffs Stanley Durr, Keith Downing, Reede Cowherd, Diane Durr, and Leonard Langs. This conclusion applies to both the claim under 42 U.S.C. § 1981 and the Elliott–Larsen Civil Rights Act, for Michigan courts essentially follow federal decisions in assessing allegations of employment discrimination in violation of state law. *Civil Rights Commission v. Chrysler*, 80 Mich. App. 368, 263 N.W.2d 376 (1977).

Plaintiffs also claim that defendant is liable to them under Section 1981 and the Elliott–Larsen Civil Rights Act because of a hostile and discriminatory working environment resulting from the use of racial slurs, the toleration of whites assaulting blacks, and the lack of black sergeants and black female security officers.

■ Such a claim may arise under Section 1981 and under the Michigan law, but the analysis is the same as set forth in Title VII cases. *See Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250 (6th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), a sex discrimination case, the Supreme Court explicitly recognized the existence of a cause of action for unlawful discrimination based upon a hostile or abusive work enviornment. The Court declined to rule on the circumstances under which an employer may be deemed liable to the plaintiff for a hostile work environment, but the Court indicated that it would be appropriate to look to agency principles for guidance in this area, and that employers should not be held strictly liable for harassment in the work place. *Id.* 477 U.S. at 71, 106 S.Ct. at 2408, 91 L.Ed.2d at 63.

More recently, the Sixth Circuit has extensively addressed the hostile working environment cause of action in the sex discrimination case of *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). *Rabidue* sets forth the elements a plaintiff must assert and prove in an offensive work environment sexual harassment action which, adapted to a race discrimination case, requires a plaintiff to assert and prove: 1) he is a member of a protected class; 2) he was exposed to racial slurs and other derogatory treatment on the basis of race; 3) the alleged racial harassment "had the effect of unreasonably interfering with plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff;" and 4) "the existence of respondeat superior liability."

In the case at bar, it is clear to the Court that, on the present record, plaintiffs cannot prove the third and fourth elements: that the harassment was sufficiently severe, and that defendant could be found liable on the basis of respondeat superior.

The *Rabidue* court noted that among the relevant considerations in determining whether the conduct alleged rises to the level of establishing a violation of federal law are "such objective and subjective factors as the nature of the alleged harassment, the background, and experience of the plaintiff, [the plaintiff's] coworkers and supervisors, the totality of the physical environment of the plaintiff's work area, [and] the lexicon of obscenity that pervaded the environment of the workplace...." *Id.* at 620–21. In *Johnson v. Bunny Bread*

*Co.*, 646 F.2d 1250, 1257 (8th Cir.1981), cited with approval by the Sixth Circuit in *Erebia, supra,* the court rejected a claim of hostile work environment based on racial harassment, stating:

> We find no steady barrage of opprobrious racial comment. The use, if any, of racial terms was infrequent, was limited to casual conversation among employees, and with possible rare exceptions was not directed toward appellants....

The *Rabidue* court also made clear that "the ultimate burden of proof is upon the plaintiff to additionally demonstrate respondeat superior liability by proving that the employer, through its agents or supervisory personnel, knew or should have known of the charged harassment and failed to implement prompt and appropriate corrective action...." *Rabidue* at 621.

Applying the law to the facts in this case is made difficult by the lack of organization in plaintiffs' response, which fails to point the Court in any particular direction or to any particular record to support their claim of liability against the defendant for a hostile work environment.

The Court finds that the record demonstrates that the allegations of hostile work environment basically stem from isolated instances when other persons at work used racially derogatory terms, which obviously cannot be condoned. Plaintiffs have testified to hearing the terms "coon," "nigger," "nigger ass," "dark boy," and other derogatory terms. However, none of the plaintiffs lodged a grievance with defendant, or otherwise brought this to defendant's attention, although it is explicitly encouraged in defendant's employee handbook that employees file confidential complaints to enable defendant to maintain a work place free from discrimination. Also many of the plaintiffs have testified in their depositions that, while they heard these terms used, they were not being directed at the particular plaintiff. Also, defendant admits that, after the filing of this complaint, some of the plaintiffs brought certain despicable incidents to the defendant's attention. For example, in a memo dated April 1987 plaintiff Cowherd report-

ed that on Thanksgiving night 1986 he heard Sergeant Gasiewski call him a "nigger." However, the record shows through the affidavit of Lorraine Latour that, upon learning of this, defendant demoted Sergeant Gasiewski, placed him on final warning, and advised him that any further incidents of misconduct would result in his termination. Similarly, defendant first learned of the alleged KKK meeting from Langs' deposition. Through Latour's affidavit, defendant represents that the person allegedly involved was verbally warned.

There is no question but that the conduct which plaintiffs allege occurred in the work place can only be viewed with utter disdain. The use of such racially derogatory words is utterly without excuse. But that does not resolve the question of whether there has been a sufficient showing of a cause of action for a racially hostile environment. The Court finds that, in responding to defendant's motion, plaintiffs have failed to point to facts that would establish racial harassment that "had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff ..." *Rabidue, supra.* Furthermore, it appears undisputed that, until after the lawsuit was started, plaintiffs never gave notice to the defendant of the racial harassment they felt they were subjected to. What notice defendant received, and its first opportunity to address the problems, came after the filing of plaintiffs' complaint. Under these circumstances, the Court concludes that plaintiffs have failed to show that at trial they could sustain their ultimate burden of proof to demonstrate a hostile working environment or respondeat superior liability on the part of defendant by proving that the employer, through his agents or supervisory employees knew, or should have known, of the charged harassment, and failed to implement proper and corrective action.

Therefore, for these reasons, defendant's motions for summary judgment on the

claim of hostile work environment is granted.

Plaintiffs' final claim is one of intentional infliction of emotional distress.

■ To succeed in a claim for intentional infliction of emotional distress, a plaintiff "must produce evidence of 'extreme and outrageous' conduct, of defendants' injurious intent or reckless disregard for the consequences of their acts, of causation and of the actual experiencing of severe distress before his case could be submitted to the jury...." *Holmes v. Allstate Insurance*, 119 Mich.App. 710, 716, 326 N.W. 2d 616 (1982). The Michigan courts have adopted the position set forth in the Restatement 2d of Torts, that:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community....

In responding to defendant's motion for summary judgment, plaintiffs have failed to show that they will be able to present sufficient evidence to justify a finding that the actions of the defendant were so extreme in degree, and went so beyond any possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized society. The court finds that, based upon the record in this case, plaintiffs could not succeed on their claims of intentional infliction of emotional distress. Therefore, the Court grants summary judgment on this count as to these plaintiffs.

The cumulative effect of the rulings above is to dismiss all remaining claims of plaintiffs Downing, Cowherd, Langs, and Stanley and Diane Durr as against defendant. The claims of Roby are discussed below.

## IV

■ Prior to the motion cut-off date in this case, defendant moved to dismiss as against plaintiff Anthony Roby on the grounds that Roby had repeatedly failed to appear for depositions. After oral argument on September 4, the Court ordered Roby to appear at defendant's office for deposition on September 9, and ruled that, if he failed to comply, the Court would dismiss his complaint. Before the Court now is another motion moving to dismiss on the grounds that Roby has failed to fully comply with this Court's order that he appear and be deposed.

The history of this case shows that defendant noticed Roby's deposition for December 16, 1986, March 16, 1987, and July 10, 1987. One day before the second scheduled deposition in March, Roby's counsel informed defendant's counsel by letter that, due to Roby's mental condition as diagnosed by his psychiatrist, he would be unable to appear for deposition. Roby's attorney attached a letter from Roby's physician saying that he might lose control of himself, and that medication was temporarily causing Roby to suffer a loss of memory. Defendant's counsel found this unacceptable, and Roby did appear at the March 16, 1987 deposition. Because Roby was taking five different medications, some of which affected his memory, defendant's counsel adjourned the deposition to depose Roby's doctor. At that deposition, the doctor did not state that Roby could not be deposed, but he did state that medications might be causing memory loss.

In early June, defendant noticed the deposition of Roby for July 10, 1987. Several days before the scheduled date, defendant's counsel confirmed with Roby's counsel that Roby would appear. But on July 10, about 20 minutes before the scheduled start of the deposition, Roby's counsel called defendant's counsel to inform him that Roby was in Canada and would not make the deposition. Counsel appeared at the deposition with a note from Roby's doctor, dated July 6, 1987, which said: "It is my clinical impression that Mr. Roby will not be able to tolerate a verbal legal deposition. I am afraid that, under the right amount of stress, he will lose control of himself. Therefore, I am advising that he have a written deposition."

Defendant's position throughout this litigation has been to insist upon oral deposi-

tion because the volume of exhibits involved in the lawsuit makes deposition upon written interrogatories impossible. In light of defendant's insistence, Roby agreed to such an oral deposition on condition that someone other than Mr. Hurford, of defendant's firm, conduct the deposition. Defendant would not agree to this because considerable sums had already been spent on Hurford's preparation for the first two depositions, which never really got off the ground.

To make a long story short, after this Court ordered Roby to appear for deposition in September, Roby complied by appearing on September 9, at 2:00 p.m. for deposition. However, around 5:00 p.m. of that day, Roby indicated he had to take certain medication that would interfere with his ability to testify. Thus it was agreed that the deposition would be adjourned until September 15 at noon, which, Roby agreed with defendant's attorney, would allow him to get up at 9:00 o'clock, take his medication, and be able to testify around noon.

Roby appeared for deposition at noon on September 15, but his attorney ended it around 3:00 p.m., claiming Roby's condition had deteriorated to the point of preventing him from comprehending simple questions. The parties parted on less than cordial terms, although they were in agreement that, because of Roby's condition, continuing the deposition would be futile. Since then, despite defendant's repeated attempts to schedule a date for continuing Roby's deposition, plaintiff's counsel has refused to make Roby available.

Plaintiff claims that Roby should not be further deposed because he experiences great difficulty adjusting to the manner and harsh tactics of defendant's attorney; he is emotionally unstable and must take several medications; he sees attorney Hurford in nightmares; and he remains restless at the prospect of continued grilling by Hurford. Also, he complains that Hurford brings bodyguards to the deposition, which provokes plaintiff and his attorney.

The Court feels this matter of the deposition of Mr. Roby has gone on long enough.

Fed.R.Civ.P. 37(d) provides that, if a party fails to appear for deposition, the court may make such orders as are just, including imposing the sanctions listed in Fed.R. Civ.P. 37(b)(2)(A), (B), and (C). These sanctions include dismissing the action, or rendering judgment by default. Also, Fed.R. Civ.P. 41(b) provides in pertinent parts:

> For failure of the plaintiff to prosecute or comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

In *Hepperle v. Johnston,* 590 F.2d 609 (5th Cir.1979), the court affirmed a dismissal of plaintiff's action under Rule 41(b) for failure to prosecute where the plaintiff had exhibited a pattern of delay by repeatedly failing to appear for deposition, even after the court had ordered him to appear on pain of dismissal.

For reasons similar to those cited in *Hepperle,* the Court will grant defendant's motion to dismiss as to plaintiff Roby under Rule 41(b), with prejudice. Roby cannot dictate how defendant's counsel conducts its discovery (i.e. by oral or written deposition), or by whom he will be deposed. Roby and his counsel have used every method within their means to delay the completion of Roby's deposition. It would be unfair to defendant to let Roby avoid deposition and then let him testify at trial, which will be at least as stressful, if not more stressful, than testifying at deposition. There is no excuse for the action of Roby's counsel in this matter in the handling of discovery matters. For these reasons, defendant's motion to dismiss plaintiff Roby is granted.

## V

It is necessary to address another discovery dispute raised before this Court in connection with these motions involving the failure to depose Lorraine Latour, defendant's vice-president of personnel. In responding to the motion for summary judgment, plaintiffs have repeatedly challenged defendant's reliance on Latour's affidavit, and justified plaintiffs' rather weak response to the motion on grounds that de-

fendant is guilty of abusing the discovery process by failing to produce Latour for deposition, and by failing to produce certain records. Plaintiffs also suggest, in connection with the matter of plaintiff Roby's deposition, that defendant is in no position to complain, and it would be unfair to sanction Roby for discovery abuses when, in fact, defendant is guilty of such abuses.

The record in this case shows absolute and complete laxity and failure on the part of plaintiff to pursue the remedies it has to obtain Latour's deposition. A brief history is necessary.

On January 9, 1987, plaintiffs' counsel served defendant's counsel with a subpoena calling for the deposition of Lorraine Latour, and demanding that she bring any and all documents related to the defense of this case. Defendant filed a motion to quash, objecting to plaintiffs' attempt to compel the deposition of an out-of-state witness without tendering airfare and costs, and objecting to the document request as overbroad and vague. Plaintiffs' counsel had written, and tendered with the subpoena, a check for $30, noting on the check that it represented a "witness fee." This check was returned by the bank because the account was closed.

The matter was referred to the Court's magistrate. On February 18, Magistrate Hooe ruled from the bench as follows:

The deposition of Lorraine Latour will be taken in Detroit with plaintiff paying for reasonable costs of transportation from and to her place of residence in Minnesota to Detroit at a date and time and place to be determined by the parties.

The Magistrate also tried to deal with the other aspect of the motion to quash, namely the documents. Plaintiffs' counsel indicated that they sought the personnel files of more than 60 individuals. Ultimately Magistrate Hooe resolved this matter by observing that this raised a "problem of burdensomeness," and by directing plaintiffs to file a separate request for production of documents. The Magistrate issued two orders, dated March 6, 1987, addressing these matters. In the Order Denying

Defendant's Motion to Quash Subpoena Ducus Tecum, it is provided:

IT IS HEREBY ORDERED AND ADJUDGED that plaintiffs may depose Lorraine Latour in Detroit, Michigan on the condition that the reasonable cost of the deponent's airfare from her Minnesota residence shall be borne by plaintiffs. IT IS FURTHER ORDERED that the deposition of Lorraine Latour shall be scheduled to take place after March 31, 1987, but no later than April 17, 1987, to allow defendant to properly respond to plaintiffs' request to produce documents which were served upon the defendant on February 27, 1987.

The other order, entitled "Order Partially Granting Plaintiff's Motion to Compel Deposition," appears to be a clarifying order, and provides:

As a result of a subsequent telephone conference between the undersigned and counsel for the parties on March 3, 1987, IT IS HEREBY ORDERED that defendant shall be given the full 30 days allowed under Fed.R.Civ.P. 34 to respond to plaintiffs' request for documents which was served on Defendant on February 27, 1987. IT IS FURTHER ORDERED that the deposition of Lorraine Latour shall be scheduled to occur after March 31, 1987, but no later than April 17, 1987.

Plaintiffs' motion is therefore GRANTED to the extent that defendant shall produce Ms. Latour for deposition, and respond to plaintiff's document request consistent with the letter and spirit of this order.

On April 7, 1987, defendant's counsel sent plaintiffs' counsel a letter informing him that the requested documents were available at defendant's counsel's office upon the payment of $308.60 in copying costs.

Nothing happened in response to defendant's letter, and on May 11, almost one month after the final date in the Magistrate's order upon which Ms. Latour was to be deposed, plaintiffs filed a motion to compel answers to certain interrogatories, and request for production of documents, and

defendant filed a motion for protective order. These motions were eventually withdrawn, and the parties entered into a stipulation on the record that defendant would respond to the interrogatories in three specific respects. On June 18, plaintiffs' counsel tendered a check in the amount of $308.60 to defendant's counsel, and defendant delivered seven packages of documents, as promised in the letter of April 8. Plaintiffs' counsel also tendered a $30.00 money order, stating it was "for Latour's fees for her deposition."

The fact is, after matters appeared to be resolved in June 1987, plaintiffs did not bring to this Court's attention any problems there were with going forward with Latour's deposition until October 1987, one month after defendant had filed its motion for summary judgment, and long after the close of discovery according to this Court's scheduling order. It is undisputed on the record that plaintiffs never requested the presence of Lorraine Latour on a specific date between March 31, and April 17—or on any other date—for deposition.

■ Plaintiffs have represented to this Court that defendant's failure to comply with document requests made any attempt to depose Ms. Latour a futile gesture. The record simply does not support this representation. Numerous documents were made available to plaintiffs on April 8, well within the period that the magistrate had provided for Ms. Latour's deposition, yet plaintiffs waited until mid-June to collect these documents. At the hearing before this Court, plaintiffs also claimed that they had tendered the airfare and costs for Ms. Latour to come to Detroit. They claim that the payment of $308.60, plus the $30 money order, covered that. It is their position that $308.60 was an excessive charge for copying, and part of that payment, therefore, was to be applied to the costs of bringing Ms. Latour to this jurisdiction. The Court finds this argument completely disingenuous given the record and the timing of this claim. The Court is without doubt that the reason Ms. Latour was not deposed was because plaintiffs failed to make specific arrangements for the deposition, and failed timely to seek judicial intervention to compel the deposition. The Court concludes that there is no support for plaintiffs' position that discovery abuses by defendant make defendant's positions in its motions for summary judgment and to dismiss unsupportable.

The Court has devoted so much time to discussing the matter of Latour's deposition because plaintiffs have placed great reliance on the lack of a deposition of Latour in responding to defendant's motion to dismiss as to plaintiff Roby, and especially in responding to the motion for summary judgment as to the other five plaintiffs. As indicated above, there is no merit to plaintiffs' claim of misconduct by defendant in failing to produce Ms. Latour. Ms. Latour was not deposed in a timely manner only because plaintiffs failed to take such measures as were necessary to bring her to this jurisdiction in compliance with the discovery orders of this Court's magistrate.

All of defendant's motions are granted, and the case will be dismissed as to all plaintiffs.