25CA0029 Estate of Heidel 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0029
Mesa County District Court No. 24PR30187
Honorable Gretchen B. Larson, Judge

---

In re the Estate of Gary Kaye Heidel, deceased.

Desda Daniell Casey,

Appellant,

v.

Michele Aschbacher, Kersten Heidel, Camille Rowell, and Michael Rowell,

Appellees.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Tow and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Desda Daniell Casey, Pro Se

Killian, Davis, & Richter, P.C., J. Keith Killian, Damon Davis, Grand Junction, Colorado, for Appellees

¶ 1    In this probate case, Desda Daniell Casey[1] appeals the district court's order concluding that the estate of her deceased father, Gary Kaye Heidel, had no legal interest in a settlement arising out of a wrongful death suit concerning the death of his longtime significant other, Catherine Rowell.  We affirm.

## I.    Background

¶ 2    Catherine and Gary (the couple) began their relationship in 1992 and lived together off and on until 2016, when Catherine died while incarcerated at the Rio Blanco County Jail.  After Catherine's death, Gary asserted that he was Catherine's common law husband and filed a wrongful death action against the Rio Blanco County Sheriff's Office, the appointed sheriff, and individual sheriff's deputies (collectively, RBSO), in federal district court asserting federal and state claims based on alleged violations of Catherine's constitutional rights (the federal case).  *See Heidel v. Mazzola*, 851 F. App'x 837 (10th Cir. 2021).  Catherine's children — Michele Aschbacher, Camille Rowell, Kersten Heidel, and Michael Rowell

---

[1] To avoid confusion between those who share a last name, we refer to parties in this opinion by their first names.  We intend no disrespect in doing so.

(collectively, Catherine's children) — and her estate joined the federal case as plaintiffs. *See id.* The federal district court entered summary judgment in favor of the RBSO on Catherine's children and Gary's federal claims but dismissed the state law claims without prejudice. *See id.* at 839-40.

¶ 3 Catherine's children and Gary then filed a wrongful death action against the RBSO in Adams County Case No. 20CV30602, which was later transferred to Rio Blanco County Case No. 20CV1 (the state case).[2] Gary also asserted that he was Catherine's common law husband in the state case.

¶ 4 Gary died during the pendency of the state case. About a year after Gary's death, Catherine's children — who were the remaining plaintiffs in the state case — reached a settlement agreement with the RBSO. As part of the settlement agreement, Catherine's children agreed to initiate a probate case for Gary's estate to have the district court determine whether Gary's estate had any rights to

---

[2] We take judicial notice of the court records in the Adams County and Rio Blanco County cases. *See Harriman v. Cabela's Inc.,* 2016 COA 43, ¶ 64 (noting that appellate courts "can 'take judicial notice of the contents of court records in a related proceeding'" (quoting *People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004))).

the settlement funds. Catherine's children thus commenced the underlying probate proceeding by filing a petition to determine heirship and interests in property. In the petition, Catherine's children asserted in relevant part that Gary's estate didn't have an interest in the settlement funds because the couple wasn't common law married.

¶ 5 Desda, who is Gary's child, was named as an interested party in the probate case. Catherine's children notified her of the probate proceedings as required by section 15-12-1303, C.R.S. 2025. Desda filed a responsive pleading disputing Catherine's children's claim that the couple wasn't common law married. Desda asserted that, because the federal case and state case had already determined that the couple was common law married, Catherine's children's assertion otherwise was barred by issue preclusion and claim preclusion.

¶ 6 The court held an evidentiary hearing on the petition. During the hearing, the court received evidence regarding whether (1) there was a prior determination that the couple was common law married, such that Catherine's children were precluded from arguing otherwise; and (2) the couple's past actions and

representations could support a finding that the couple was common law married if there was no such prior determination. At the conclusion of the hearing, the court took the matter under advisement and subsequently issued a written order (the judgment).

¶ 7 The court concluded that, because there wasn't a prior final judgment on Gary's claim of a common law marriage, Catherine's children's challenge to the existence of a common law marriage between the couple wasn't barred by issue or claim preclusion. The court also determined that Desda hadn't proved by a preponderance of the evidence that the couple was common law married. And because the couple wasn't common law married, the court concluded that Gary's estate had no interest in the settlement agreement.

¶ 8 Desda now appeals, arguing that the court erred by concluding that claim preclusion doesn't apply and that the couple wasn't common law married. Although Desda labeled her argument as one of "claim preclusion," whether Gary and Catherine were common law married is not a claim but, rather, an issue integral to the claims in the federal case. Because she is self-represented, we broadly construe her argument as invoking the doctrine of issue

4

preclusion to ensure that she isn't denied review of her argument. *See Jones v. Williams*, 2019 CO 61, ¶ 5. She also asserts the court abused its discretion by not considering or giving "legal weight" to certain evidence. For the reasons discussed below, we disagree and therefore affirm the judgment.

## II. Catherine's Children's Challenge to the Existence of a Common Law Marriage Isn't Barred by Issue Preclusion

### A. Issue Preclusion Legal Principles

¶ 9 Issue preclusion "prevents the re-litigation of discrete issues, rather than causes of action," meaning "once a particular issue is finally determined in one proceeding, parties to this proceeding are barred from re-litigating that particular issue again in a second proceeding, even when the actual claims for relief in the two proceedings are different." *Foster v. Plock*, 2017 CO 39, ¶ 13.

¶ 10 To bar litigation of an issue in a subsequent judicial proceeding, the party asserting issue preclusion must prove four elements, including the existence of a final judgment on the merits from a prior proceeding. *See id.* A judgment is "final" when it "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine

the rights of the parties involved in the proceeding." *BDG Int'l, Inc. v. Bowers*, 2013 COA 52, ¶ 24 (quoting *Stillings v. Davis*, 406 P.2d 337, 338 (Colo. 1965)). If a party fails to prove one of the elements, their argument for issue preclusion necessarily fails. *See Wolfe v. Sedalia Water & Sanitation Dist.*, 2015 CO 8, ¶ 16 (noting that all four elements must be proved for issue preclusion to apply).

¶ 11   Issue preclusion is a question of law that we review de novo. *Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 17.

### B.   Analysis

¶ 12   Desda asserts that the issue of whether the couple was common law married was already "decided" by the courts in the federal case and the state case. We aren't persuaded.

¶ 13   To support her argument, Desda asserts that the issue was previously litigated in the federal case because Catherine's children acknowledged and signed responses to interrogatories that affirmed Gary was Catherine's common law husband. She asserts that Catherine's children's acknowledgment in the federal case "formed the basis" for the state case. Thus, she argues that the district court erred when it treated as not yet resolved the question of whether the couple was common law married. However, Desda's

arguments about the effect of the federal and state cases are misplaced.

¶ 14     While Catherine's children may have affirmed that Gary was Catherine's common law husband during the discovery phase of the federal case, the federal court dismissed that case and never issued a final judgment. *See Heidel*, 851 F. App'x at 839-40. Said differently, Catherine's children's acknowledgment during discovery doesn't constitute a final judgment. *See Bowers*, ¶ 24. Thus, the legal question of whether the couple was common law married was never decided in the federal case and, therefore, lacked a final judgment as required under issue preclusion. *See id.*; *Foster*, ¶ 13.

¶ 15     Gary died during the pendency of the state case and his estate wasn't substituted as a party. Catherine's children later reached a settlement with the RBSO after Gary's death. The court then stayed proceedings in the state case pending the outcome of the probate case underlying this appeal, so there hasn't been a final judgment in the state case that determined the couple was common law married.

¶ 16     The court's judgment in the probate case was the first time that any court had entered a final judgment determining whether

7

the couple was common law married. Thus, the proceedings in the state case didn't bar Catherine's children's challenge to Desda's contention that the couple was common law married. Accordingly, Desda's assertion that issue preclusion bars Catherine's children's challenge necessarily fails. *See Wolfe*, ¶ 16.

¶ 17     Desda makes two additional arguments in support of her assertion that the court erred by not giving preclusive effect to the prior litigation. First, she asserts that Catherine's children could've challenged the common law marriage while Gary was alive and that their challenge after his death is "procedurally improper." However, Desda never raised this argument during the probate proceeding, so we don't consider it further. *See Colo. Div. of Ins. v. Statewide Bonding, Inc.*, 2022 COA 67, ¶ 73 ("Arguments never presented to, considered by, or ruled upon by a trial court may not be raised for the first time on appeal.").

¶ 18     Second, she asserts that the designation of "widower" on Gary's death certificate[3] is "legally significant" because section

---

[3] Desda didn't submit Gary's or Catherine's death certificates as part of the record on appeal. However, we take judicial notice of the court file in Mesa County Case No. 24PR30187, which contains both death certificates. *See Harriman*, ¶ 64.

25-2-110, C.R.S. 2025, requires that a decedent's marital status be "properly established" and accurately reflected on the decedent's death certificate. But section 25-2-110 doesn't require that a decedent's marital status must be "properly established." Rather, that section simply requires that the personal data for a death certificate — including a decedent's marital status — be provided by "the next of kin or the best qualified person or source available." § 25-2-110(3)(a); *see also* Dep't of Pub. Health & Env't Reg. 2.1(J), 5 Code Colo. Regs. 1006-1 (recognizing marriage as a "vital event" that must be incorporated into official records, including death certificates).

¶ 19    Furthermore, a death certificate doesn't "end[] the particular action" or "completely determine the rights of the parties involved." *Bowers*, ¶ 24 (quoting *Stillings*, 406 P.2d at 338). Thus, a death certificate isn't a final judgment, and we reject Desda's argument that the marital status on Gary's death certificate conclusively established that the couple was common law married.

### III. The Court Didn't Abuse Its Discretion in Determining Whether the Couple Was Common Law Married

#### A. Common Law Marriage Legal Principles

¶ 20    A couple may establish a common law marriage by their mutual consent or agreement "to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement." *Hogsett v. Neale*, 2021 CO 1, ¶ 49. The key inquiry in determining whether a common law marriage has been established is whether "the parties mutually intended to enter a *marital* relationship," meaning they intended "to share a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation." *Id.*

¶ 21    To determine whether a couple mutually consented to establish a common law marriage, the court considers the totality of the circumstances. *See id.* at ¶ 50. As part of the court's totality of the circumstances analysis, it looks to a nonexhaustive list of factors evidencing their mutual intent to enter into a marital relationship, including whether the couple has (1) cohabitated; (2) a reputation in the community as spouses; (3) shared financial responsibility; (4) shared symbols of commitment; (5) adopted each

other's surnames; and (6) referenced each other as spouses.  *See id.* at ¶¶ 55-56.

¶ 22    A person seeking to have a court recognize a common law marriage must prove the mutual intent of the parties to the purported marriage by a preponderance of the evidence.  *See id.* at ¶ 17; *see also* § 13-25-127, C.R.S. 2025 ("[T]he burden of proof in any civil action shall be by a preponderance of the evidence.").

¶ 23    We review the court's factual findings for clear error, meaning we must accept the court's factual findings unless the findings have no record support.  *In re Estate of Yudkin*, 2021 CO 2, ¶ 16; *Parocha v. Parocha*, 2018 CO 41, ¶ 11.  We then review the court's conclusion based on those findings that no common law marriage existed for an abuse of discretion.  *Yudkin*, ¶ 16; *Rains v. Barber*, 2018 CO 61, ¶ 8 (noting that a court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law).

### B.    Additional Background

¶ 24    The court concluded that Desda failed to prove by a preponderance of the evidence that the couple agreed to enter into the legal contract of marriage or engaged in conduct manifesting the

intent to be married. Specifically, the court found that Desda failed to introduce any evidence that the couple

- celebrated a certain day as their anniversary;

- wore wedding rings;

- held themselves out to the community as husband and wife; and

- had shared financial responsibilities, such as joint bank or credit accounts, joint property ownership, or joint tax returns.

¶ 25 Conversely, the court considered the evidence and determined that it didn't weigh strongly in favor of — or weighed against — the conclusion that the couple manifested a mutual intent to be married. For example, the court found that the couple lived together on and off during their relationship but that "mere cohabitation does not trigger marital rights or show an intent to be married." And while Catherine's last name was listed as "Heidel" in certain documents, the court noted that the decision to take a partner's last name isn't necessarily indicative of a common law marriage, and the court didn't receive any evidence that Catherine had legally changed her last name. Similarly, the court found that,

while the couple may have shared a child — Kersten — "in today's society, having a child . . . is not indicative of an intent to enter into a marriage contract." Furthermore, the court received evidence that Gary had previously referred to Catherine as his "girlfriend" or "live in girlfriend" in legal documents and that Catherine's obituary referred to Gary as her "life partner," rather than her husband.

¶ 26 The court found that Gary signed an affidavit of common law marriage (the affidavit) after Catherine's death, but placed little weight on it because, at the time he signed it, Gary had a financial incentive to indicate that Catherine was his wife.

### C. Analysis

¶ 27 Desda asserts that the court misapplied the standard set forth in *Hogsett* when it determined that the couple wasn't common law married. We see no abuse of discretion.

¶ 28 The court considered the totality of the couple's circumstances to determine whether the couple had mutually consented to establish a common law marriage, as evidenced by its consideration of approximately eleven of the nonexhaustive factors set forth in *Hogsett*, ¶¶ 55-56. The court considered several factors that could indicate the couple's intent to be common law married, including

Catherine's use of Gary's last name, the couple's cohabitation, and their shared child. But it weighed those factors against other evidence and determined that the evidence as a whole didn't demonstrate the couple's mutual intent to be married. While it is true that Gary signed the affidavit and affirmed that he was Catherine's common law husband, such evidence is only indicative of Gary's intent and doesn't establish the couple's *mutual* consent or agreement. Thus, as required by *Hogsett*, ¶ 49, the court appropriately considered the evidence presented to it to determine whether the couple's conduct manifested their mutual agreement to establish a common law marriage.

¶ 29    Notably, Desda failed to include transcripts from the evidentiary hearing, so we must presume that the record supports the judgment. *See In re Marriage of Dean*, 2017 COA 51, ¶ 13 (noting that if an appellant asserts that a trial court's findings or conclusions are unsupported or contrary to the evidence, "the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion," and, if the appellant fails to provide the transcript, then we must presume the record supports the judgment (citation omitted)). And, in any event, the record

before us supports the court's judgment, so we won't disturb it. *See In re Estate of Owens*, 2017 COA 53, ¶ 22 (noting an appellate court won't reweigh evidence).

## IV. The Court Didn't Abuse Its Discretion When It Weighed the Evidence

### A. Applicable Legal Principles

¶ 30     The Colorado Rules of Evidence guide a court's determination of the admissibility of evidence. *See* CRE 401 (defining relevant evidence); CRE 402 (stating that relevant evidence is generally admissible unless certain exceptions apply). Hearsay statements aren't admissible unless they fall under an applicable exception. *See* CRE 801(c) (defining "hearsay" statements); CRE 802 (noting general inadmissibility of hearsay statements); CRE 803 (outlining hearsay exceptions regardless of the availability of the declarant); CRE 804 (outlining hearsay exceptions when the declarant is unavailable).

¶ 31     "It is the trial court's duty to determine the relevance and admissibility of evidence." *Curry v. Brewer*, 2025 COA 28, ¶ 30. And in a common law marriage case, the court is the fact finder, so

it determines whether evidence is credible and what weight to afford the evidence. *See Hogsett,* ¶ 50.

¶ 32     We review a court's evidentiary rulings for an abuse of discretion. *Wal-Mart Stores, Inc. v. Crossgrove,* 2012 CO 31, ¶ 7.

### B.     Analysis

¶ 33     As relevant here, Desda asserts that the court erred when it "wrongfully dismissed critical documentary evidence and sworn testimony" and didn't provide "legal weight" to (1) the affidavit; (2) Gary's death certificate; (3) evidence of the couple's public representations as husband and wife; and (4) a letter to the court from Desda's mother, Shawna Casey. Desda also argues that the court "failed to apply CRE 803(14) and CRE 804." We reject her assertions for four reasons.

¶ 34     First, the court expressly considered the affidavit. However, as noted above in Part III.C, the court concluded that the timing of the affidavit and Gary's financial incentive to sign it outweighed any evidence that the affidavit established a common law marriage. As the fact finder, it was the court's duty to determine the credibility and weight of the affidavit, *see Hogsett,* ¶ 50, which is exactly what the court did here.

¶ 35    Second, the court received into evidence a copy of Gary's death certificate. While the court didn't make written findings about the weight it afforded to the statement on Gary's death certificate that he was a "widower," it received evidence demonstrating that it was Desda's decision to label Gary's marital status as "widower" on his death certificate. *See* § 25-2-110(3)(a). The court also received into evidence Catherine's death certificate, which lists Catherine's marital status as "divorced" and doesn't list Gary as her spouse. The court was thus required to resolve the conflicting evidence by considering its credibility and determining whether it weighed for or against the conclusion that the couple was common law married. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 23 (resolving conflicts in the evidence is "solely within the province of the fact finder"); *Hogsett*, ¶ 50. And because we don't have the hearing transcripts, we presume the record supports the judgment. *See Dean*, ¶ 13.

¶ 36    Third, contrary to Desda's assertion otherwise, the court did consider documentary evidence related to Catherine's use of Gary's last name. This evidence included a receipt that Catherine signed as "Cathy Heidel" and a pamphlet from Catherine's funeral, which

17

listed Catherine's last name as "Rowell Heidel" and said that Gary was Catherine's "life partner." However, as discussed in Part III.C, the court appropriately considered the credibility of that evidence and weighed it against other, conflicting evidence that it received, which was within the court's province as the fact finder. *See Ramsey*, ¶ 23.

¶ 37 Fourth, Desda argues that Shawna's letter was "written testimony" that detailed the couple's marital behavior. Desda argues that the court failed to afford the letter "legal weight." The court declined to admit Shawna's letter into evidence because it was hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *See* CRE 801(c); *Mullins v. Med. Lien Mgmt., Inc.*, 2013 COA 134, ¶ 52. Desda offered Shawna's letter for the truth of the statements it contained — i.e., that the couple behaved as spouses. Shawna's letter therefore falls squarely within the definition of hearsay.

¶ 38 Desda appears to assert that the court should have determined the letter was admissible under CRE 803(14) or CRE 804. CRE 803(14) is an exception to the hearsay rule that allows records of documents that establish or affect an interest in property

18

to be admitted. Desda doesn't explain why Shawna's letter was admissible under this rule, and we therefore decline to consider this argument further. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) (declining to consider a bald legal assertion presented without argument or development).

¶ 39    Desda doesn't explain what portion of CRE 804 she believes Shawna's letter is admissible under. Regardless, we acknowledge that CRE 804(b)(4)(B) allows a court to admit hearsay statements of family history. However, the admissibility of such statements is limited to factual information like "date[s] of birth, marriage, death, and the fact and degree of family relationships." *People v. Raffaelli*, 701 P.2d 881, 884 (Colo. App. 1985). This rule doesn't authorize the admission of hearsay statements purporting to explain the circumstances or events underlying such family history facts. *See id.* at 884-85. Thus, to the extent Desda argues that Shawna's letter was admissible under CRE 804(b)(4)(B), we reject that argument. To the extent Desda argues that Shawna's letter was admissible under a different portion of CRE 804, her argument is undeveloped, and we don't consider it further. *See Barnett*, 252

P.3d at 19.  The court thus didn't abuse its discretion by refusing to admit Shawna's letter into evidence.

## V.    Disposition

¶ 40    The order is affirmed.

JUDGE TOW and JUDGE LUM concur.